Fred Simpson, Esq.
JENKS & SIMPSON, P.C.
1821 South Ave. W, Suite 204
Missoula, MT 59801
Telephone: (406) 549-2322
Facsimile: (406) 549-2707
Email: fsimpson@jenkssimpson.legal
*Attorneys for Plaintiffs and Counterclaim Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| GLACIER BEAR RETREAT, LLC, GAIL L. GOODWIN and DARRYL C. SLATTENGREN,<br><br>Plaintiffs/Counterclaim Defendants,<br><br>vs.<br><br>MATT DUSEK AND RACHEL DUSEK,<br><br>Defendants/Counterclaimants. | Cause No. CV 22-19-M-KLD<br><br>**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

Table of Authorities ........................................................................................ 3

Introduction..........................................................................................................5

Background of Dispute ............................................................................................ 6

Summary Judgment Standard ...........................................................................13

Argument .............................................................................................................14

1. The Construction of the BSA is a Question of Law ..............................14

2. The BSA is a Valid and Enforceable Contract......................................15

3. GBR is Entitled to Specific Performance Even Though It Did Not Sign the BSA…………………………......................................16

4. The Contingency Period Expired …………………………...............18

5. Duseks Breached the BSA ..................................................................19

6. Glacier Bear is Entitled to Specific Performance ..................................21

7. Summary Judgment Should Be Entered for Glacier Bear on Dusek's Counterclaim ……………………… ...............................................27

8. Glacier Bear is Entitled to Attorney' Fees ............................................27

CONCLUSION......................................................................................................28

CERTIFICATE COMPLIANCE...........................................................................29

CERTIFICATE OF SERVICE ...........................................................................30

## TABLE OF AUTHORITIES

***Cases***


*AAA Const. of Missoula, LLC v. Choice Land Corp.,* 2011 MT 262, 362 Mont. 264, 264 P.3d 709 .......... 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986) .......... 14

*Aveco Properties v. Nicholson*, 229 Mont. 417, 424-25, 747 P.2d 1358, 1362 (1987) .......... 23

*Bell v. Richards*, 228 Mont. 215, 741 P.2d 788, 791 (1987) .......... 27

*First National Bank of St. Johnsbury v. Laperle*, 117 Vt. 144, 86 A.2d 635, 641 (Vt. 1952) .......... 22

*Halcro v. Moon*, 226 Mont. 121, 125, 733 P.2d 1305, 1307 (1987) .......... 23-26

*Hillstrom v. O'Neill*, 226 Mont. 452, 457, 736 P.2d 126, 129 (1987) .......... 23

*In re Est. of Kindsfather,* 2005 MT 51, ¶ 31, 326 Mont. 192, 108 P.3d 487 .......... 15

*Ingalls v. Brady*, 180 Mont. 443, 591 P.2d 200, 203 (1979) .......... 17

*Johnson v. Meiers*, 118 Mont. 258, 263, 164 P.2d 1012, 1014 (1946) .......... 25

*King Resources, Inc. v. Oliver*, 2002 MT 301, ¶ 18, ¶ 21, 313 Mont. 17, 59 P.3d 1172 .......... 14-15, 24

*Larson v. Undem*, 246 Mont. 336, 343, 805 P.2d 1318, 1323 (1990) .......... 23

*Marco and Co., LLC v. Deaconess/Billings Clinic Health System*, 1998 MT 26, ¶ 20, 287 Mont. 293, 954 P.2d 1116 .......... 24

*SAS Partnership v. Schafer*, 200 Mont. 478, 486, 653 P.2d 834, 838 (1982) ...... 23

*State ex rel. Montana DOT v. Asbeck*, 2003 MT 337, ¶ 18,
318 Mont. 431, 80 P.3d 1272) ..................... 14

*Tombari v. Griepp*, 350 P.2d 452, 454 (Wash. 1960) ..................... 22

*Wurl v. Polson Sch. Dist. No. 23*, 2006 MT 8, ¶ 16, 330 Mont. 282,
127 P.3d 436 ..................... 14

***STATUTES***

28 U.S.C. § 1652 ..................... 14

Mont. Code Ann. § 27-1-411 ..................... 17, 22, 23, 24

Mont. Code Ann. § 27-1-417 ..................... 16, 17

Mont. Code Ann. § 27-1-419 ..................... 22

Mont. Code Ann. § 28-3-303 ..................... 14

Mont. Code Ann. § 28-2-102 ..................... 15

Mont. Code Ann. § 28-2-301 ..................... 15

***RULES***

Fed. R. Civ. P. 56(a) ..................... 13

## INTRODUCTION

Plaintiffs Gail L. Goodwin ("Ms. Goodwin"), Darryl C. Slattengren ("Mr. Slattengren") and Glacier Bear Retreat, LLC, ("GBR") (collectively, Ms. Goodwin, Mr. Slattengren and GBR will be referred to as "Glacier Bear") file this Brief in support of their Motion for Partial Summary Judgment. By that motion, Glacier Bear seeks entry of an order for specific performance against Defendants Matt Dusek ("Mr. Dusek") and Rachel Dusek ("Ms. Dusek") (collectively, "Duseks"), and an order against Duseks on their counterclaims.

Ms. Goodwin and Mr. Slattengren, a married couple, and the sole members of GBR, entered a Buy-Sell Agreement (the "BSA" or "Agreement") with Duseks, under which Duseks agreed to buy from Glacier Bear real property commonly known as 348 Grist Road, West Glacier, Montana (the "Property"). Glacier Bear is entitled to summary judgment because the undisputed facts of record establish that Duseks breached the BSA by sending written notice to Glacier Bear that they were terminating that Agreement and demanding the return of their earnest money after all applicable contingency deadlines had expired. The BSA, as well as controlling Montana law, grant Glacier Bear the right to enforce specific performance of Duseks' obligation to purchase the Property. As such, Duseks are not entitled to a return of their earnest money, and their counterclaim necessarily fails. Finally, Glacier Bear seeks an award of its attorney's fees as required by the BSA.

## BACKGROUND OF DISPUTE

Ms. Goodwin and Mr. Slattengren listed the Property for sale with real estate broker Scott Darkenwald ("Mr. Darkenwald") in September 2021. Statement of Undisputed Facts ("SUF"), ¶ 3 (July 28, 2022). GBR was the record owner of the Property. SUF, ¶ 3. On or about October 5, 2021, Duseks, as Buyers, and Ms. Goodwin and Mr. Slattengren, as Sellers, executed the BSA, pursuant to which Duseks agreed to purchase the Property for a sum certain.[1] SUF, ¶ 4. Duseks deposited a portion of the purchase price into escrow, and the balance was due in cash at the closing. SUF, ¶ 5. The BSA provided for a closing on or before November 9, 2021. *Id*.

Early on in the process, Mr. Darkenwald notified Duseks that there was an outstanding issue with water rights for the Property. SUF, ¶ 7. The BSA provided for additional time for Glacier Bear to formalize the water rights for the Property. *Id*. Despite Mr. Darkenwald's concern that resolving this issue might delay the closing, it was resolved by issuance of a water rights permit by the Montana Department of Natural Resources and Conservation ("DNRC"). SUF, ¶ 8. Mr. Darkenwald notified Duseks of this development on October 12, 2021, and on that date, provided them with the water rights abstract issued by DNRC. *Id*. The only person with whom

[1] GBR has not disclosed the purchase price herein because the parties agreed, at Duseks' request, that the price terms remain confidential.

Duseks communicated to investigate water rights for the Property was Mr. Darkenwald. *Id*.

The BSA provided a number of contingencies to closing:

> **CONTINGENCIES:** The contingencies set forth in this Agreement or on attached addenda shall be deemed to have been released, waived, or satisfied, and the Agreement shall continue to closing, unless, by 5:00 p.m. (Mountain Time) on the date specified for each contingency, the party requesting that contingency has notified the other party or the other party's Broker/Salesperson in writing that the contingency is not released, waived, or satisfied. If a party has notified the other party on or before the release date that a contingency is not released, waived, or satisfied, this Agreement is terminated, and the earnest money will be returned to the Buyer, unless the parties negotiate other terms or provisions.
>
> **INSPECTION CONTINGENCY:**
> **[x]** This Agreement is contingent upon Buyer's acceptance of any Property conditions that Buyer deems appropriate, including but not limited to any inspections or advice listed below. Buyer agrees to acquire, at Buyer's own expense, independent inspections or advice from qualified inspectors or advisors of Buyer's choice . . .

SUF, ¶ 9.

Immediately following this paragraph was a list of property conditions for which Duseks had the right to perform inspections and seek advice, including, (as relevant to this case):

> Home/Property Inspection
>
> Mold
>
> Water Rights

SUF, ¶ 10. Under the BSA, Duseks also "reserve[d] the right to visit [*sic*] property in person during the inspection period." *Id*.

The BSA then provided:

> Unless Buyer delivers written notice(s) of Buyer's disapproval of the Property conditions on or before (Notice Date) 10/26/2021 at 5:00 p.m. (Mountain Time), this inspection contingency shall be of no further force or effect. **If Buyer disapproves** of the Property condition, Buyer shall deliver written notice to the Seller or the Seller's Broker/Salesperson on or before the date specified above, together with a copy of ONLY that portion of the inspection or report upon which the disapproval is based. Buyer shall also state whether Buyer elects to immediately terminate the Agreement or negotiate a resolution of the conditions noted. **If Buyer elects to negotiate** a resolution of the conditions noted, the notice must contain all of Buyer's objections and requested remedies.
>
> If the parties enter into a written agreement in satisfaction of the conditions noted, this contingency shall be of no further force or effect. If the parties cannot come to written agreement in satisfaction of the conditions noted or if the Buyer does not withdraw, in writing, his/her disapproval of the condition noted, on or before (Resolution Date) 10/29/2021 at 5:00 p.m. (Mountain Time), the earnest money shall be returned to the Buyer, and the Agreement then terminated.

*Id*. (emphasis in original). The BSA also provided that "This Agreement is contingent upon All [*sic*] well related permitting, well log recording, and any associated water rights to be in place prior to closing. Reasonable extension for contingency and closing to be granted upon reasonable written request." A "release date" of November 3, 2021 at 5:00 p.m. (Mountain Time) was provided for the water rights to be in place. *Id*. The water rights were in place by October 12, 2021. SUF, ¶ 8.

After obtaining a property inspection from D. Quinn Construction, Inc., and already having the water rights abstract from DNRC in hand, Duseks, through Mr. Darkenwald, provided Glacier Bear with a document labeled "Inspection Notice (Results/Remedies)" (the "Inspection Notice") on or about October 16, 2021. SUF, ¶ 11. The Inspection Notice provided two boxes from which Duseks could select one. One option allowed Duseks to terminate the BSA immediately and receive a return of their earnest money. Alternatively, the other option provided, "Buyer elects to negotiate the items of disapproval described above and offers the following resolution: Seller, at seller's expense, to remedy the following [list of nine conditions]." Instead of immediately terminating the BSA and receiving a return of their earnest money, Duseks selected this latter option. *Id*.

The Inspection Notice then enumerated the nine different conditions of the Property that Duseks requested Glacier Bear to repair or remedy which were drawn directly from Quinn's report. SUF, ¶ 12. Those conditions included: drainage, siding condition, flashing, evidence of moisture, mold build-up, stairs (railing in guest house), valley flashing, insulation, and evidence of leakage. *Id*. However, nowhere in the Inspection Notice did Duseks raise any concern or objection to the water rights appurtenant to the Property, even though "Water Rights" was a condition listed in the "Inspection Contingency" paragraph. *Id*. The Inspection Notice also provided, "If Seller and Buyer agree to the remedies specified above, this document shall

constitute an amendment to the Buy-Sell Agreement referred to above and shall be an integral part of this transaction. Seller shall complete all agreed upon resolution(s) to the condition(s) and problem(s) identified above by 5:00 p.m. (Mountain Time) on 11/05/2021." *Id*. Duseks signed and dated the Inspection Notice on October 15, 2021. SUF, ¶ 13.

Mr. Darkenwald discussed what was required under the Inspection Notice with Ms. Goodwin. SUF, ¶ 14. Ms. Goodwin's response was, "fix whatever needs to be fixed, or we'll – we will fix whatever needs to be fixed." *Id*. There was no reservation on her part about moving forward to complete the repairs. *Id*. Ms. Goodwin and Mr. Slattengren signed and dated the Inspection Notice on October 17, 2021, and returned it to Duseks through Mr. Darkenwald that same day. SUF, ¶ 15. Mr. Darkenwald forwarded the fully executed Inspection Notice to Duseks the following day. *Id*. Duseks received the fully executed Inspection Notice on October 18, 2021. *Id*.

Duseks inspected the Property (for the only time) in person on October 19, 2021. SUF, ¶ 16. They told Mr. Darkenwald that they were more excited about the purchase than before they had arrived. *Id*.

Upon receipt of the Inspection Notice, Ms. Goodwin immediately hired contractors (including Cory Rensmon of Advanced Restoration as specified in the Inspection Notice) to perform the work required by the Inspection Notice. SUF, ¶ 17. GBR

spent a total of $30,319.75 on the repairs, including $25,244 on mold/moisture remediation performed by Mr. Rensmon at Advanced Restoration. *Id*. Mr. Darkenwald notified Mr. Dusek by email that Mr. Rensmon "guarantees his work." *Id*. The work was completed on or about October 26, 2021. *Id*. D. Quinn Construction then returned to the property to perform a re-inspection. It issued a report of its re-inspection dated October 27, 2021. SUF, ¶ 18. That report confirmed that the repairs required by the Inspection Notice had been completed "satisfactorily" in all regards, including remediation of mold and moisture. SUF, ¶¶ 18-20. Duseks did not return to the Property to re-inspect it after the work was completed.

On October 25, 2021, Mr. Darkenwald had a conversation with Duseks during which they told him they were "contemplating terminating the transaction and wanted to review with him, as [their] agent." SUF, ¶ 21. Ms. Goodwin and Mr. Slattengren were not informed of this conversation until after this lawsuit was filed. *Id*. Mr. Darkenwald told Mr. Dusek of his opinion that Duseks would have a problem with "seller's remedies" as he believed that Ms. Goodwin and Mr. Slattengren had complied with the Inspection Notice. *Id*. He advised Duseks twice on October 25th, that their "contingencies are gone" and to have their attorney "look at Inspection contingency & Seller's Remedies in writing." *Id*. Mr. Darkenwald then confirmed that Tom Burk, the president of his company, Glacier Sotheby's International Realty, and Jaymie Bowditch, Glacier Sotheby's counsel, agreed with

his assessment. *Id*. It was Mr. Darkenwald's opinion that as of October 25, 2021, Ms. Goodwin and Mr. Slattengren had complied with their obligations under the Inspection Notice and BSA, that it was too late for Duseks to back out of the Agreement, and at best they would lose their earnest money. *Id*.

On October 26, Mr. Dusek "called and told [Mr. Darkenwald] that he was going to go forward" and that Mr. Darkenwald could so inform Ms. Goodwin. SUF, ¶ 22.

On October 30, 2021, Mr. Dusek emailed two letters to Mr. Darkenwald purporting to terminate the BSA and demanding a return of Duseks' earnest money. SUF, ¶ 23. This was the first notice to Glacier Bear, written or otherwise, from Duseks that they intended not to close on the transaction. SUF, ¶ 23. Duseks explained their reasons for backing out of the BSA as follows:

> As we are unable to come to written agreement in satisfaction of the conditions noted, and as we did not withdraw, in writing, our disapproval of the conditions noted on or before the stipulated Resolution Date (10/29/2021 at 5:00 PM MT), we expect that the earnest money shall be returned to us and the Agreement then terminated.

SUF, ¶ 24. The second letter provided additional grounds:

> [W]e hereby serve notice of our disapproval of the Property conditions and do not wish to proceed with the purchase – we elect to immediately terminate the Agreement.
>
> In this decision, we are specifically relying on our reserved rights under the agreement to contingencies based on:

> **Well Related Permitting/Water Rights** (line 273)
> We don't find the water rights of the property to our satisfaction.
>
> **Additional Provisions – Personal Inspection/Property Visitation** (line 245)
> We don't find the visibility and noise of traffic on Camas Rd. adjacent to the Property to our satisfaction.

*Id*.

These letters of October 30, 2021 were the first notice to Mr. Darkenwald or GBR that Duseks had any objection to the water rights, as well as visibility and noise of traffic on Camas Road. SUF, ¶ 25. Duseks do not dispute that the only notices they provided to GBR that they objected to these conditions was on October 30, 2021. *Id*. Duseks' notice was untimely; at the latest, they had until 5:00 p.m., Mountain Time, on October 26, 2021, to terminate the BSA, or even under their interpretation of the Agreement, until 5:00 p.m., Mountain Time, on October 29, 2021. *Id*.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that "a fact cannot be or is genuinely disputed" must support the assertion by (A) "citing to particular parts of materials in the record, including depositions, documents, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" or (B) "showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.

## ARGUMENT

Because federal jurisdiction is grounded in diversity, the Court looks to Montana law for the "rules of decision." 28 U.S.C. § 1652.

### 1. The Construction of the BSA is a Question of Law.

Montana law is well-settled that, "The construction and interpretation of a written contract is a question of law." *Wurl v. Polson Sch. Dist. No. 23*, 2006 MT 8, ¶ 16, 330 Mont. 282, 127 P.3d 436 (*citing King Resources, Inc. v. Oliver*, 2002 MT 301, ¶ 18, 313 Mont. 17, 59 P.3d 1172). "Where a contract has been reduced to writing, the intention of the parties is to be ascertained, if possible, from the writing alone." *Id*. (*citing* Mont. Code Ann. § 28-3-303; *State ex rel. Montana DOT v. Asbeck*, 2003 MT 337, ¶ 18, 318 Mont. 431, 80 P.3d 1272).

When the terms of a contract are clear and unambiguous, the court must apply the language of the contract as written. *Id*. (*citing Asbeck*, ¶ 18, and *King Resources*, ¶ 21). Mere disagreement by the parties over the meaning of a contract does not necessarily create an ambiguity; rather, "An ambiguity exists where the language of the contract, as a whole, reasonably is subject to two different interpretations." *Id*., ¶ 17 (citations omitted).

**2. The BSA is a Valid and Enforceable Contract.**

A contract consists of the following four elements: identifiable parties capable of contracting, the parties' consent, a lawful object, and a sufficient cause or consideration. Mont. Code Ann. § 28-2-102; *AAA Const. of Missoula, LLC v. Choice Land Corp.,* 2011 MT 262, ¶ 19, 362 Mont. 264, 264 P.3d 709 (citation omitted). The parties' consent "must be free, mutual, and communicated by each to the other." Mont. Code Ann. § 28-2-301; *In re Est. of Kindsfather,* 2005 MT 51, ¶ 31, 326 Mont. 192, 108 P.3d 487.

The BSA, as amended by the Inspection Notice, satisfies each of these elements. Glacier Bear and Duseks were "identifiable parties capable of contracting." Second, each party, represented by Mr. Darkenwald as dual agent, expressed their respective consent by executing the BSA and the Inspection Notice. Third, a sale of real property is a lawful object. Finally, there was sufficient consideration to support the agreement: Glacier Bear contracted to convey by

warranty deed the Property to Duseks, and Duseks agreed to pay Glacier Bear the earnest money plus the balance of the purchase price in cash at the closing. SUF, ¶¶ 4-5.

### 3. GBR is Entitled to Specific Performance Even Though it did not Sign the BSA.

Ms. Goodwin and Mr. Slattengren signed the BSA as Sellers. SUF, ¶ 4. Ms. Goodwin and Mr. Slattengren are married, and at all times relevant have been the sole members of GBR. SUF, ¶ 2. The fact that title to the Property is held in the name of their LLC, GBR, does not afford Duseks any relief as they alleged in their Ninth Defense. (Doc. 10 at 7). Montana law provides:

> A party who has signed a written contract may be compelled specifically to perform the contract, even though the other party has not signed the contract, if the latter has performed or offered to perform the contract and the case is otherwise proper for enforcing specific performance.

Mont. Code Ann. § 27-1-417.

The Montana Supreme Court addressed the issue in a case for specific performance brought by buyers under a contract for deed where only one of the buyers signed the buy-sell agreement:

> "Where there is an agreement to sell a certain piece of property and such agreement is signed by only one of the parties thereto, and therefore seemingly lacking in mutuality of remedy, the party who did not sign can bring a suit for specific performance and thereby make the remedy mutual." . . . A plaintiff who has not signed a contract for the sale of realty to himself and another supplies the necessity (*sic*) mutuality of obligation by instituting an action for specific performance of the

> contract. . . These cases state the general rule. 81 C.J.S. Specific Performance § 11. Further, even without the above authorities, the plain meaning of the controlling Montana statutes indicated there was no lack of mutuality here. Section 17-805, R.C.M.1947, now *section 27-1-417 MCA*, provides that a party who has not signed a contract may, by offering to perform, compel specific performance from the party who has signed.

*Ingalls v. Brady*, 180 Mont. 443, 447-448, 591 P.2d 200, 203 (1979) (citations omitted).

Under the foregoing authorities, Duseks, as parties who signed a written contract, may be compelled specifically to perform the BSA, even though GBR did not sign the contract because GBR, through its sole members Ms. Goodwin and Mr. Slattengren, notified Duseks of their intention to close, and by filing this suit for specific performance. SUF, ¶ 6. Further, Duseks were notified on October 14, 2021, that Ms. Goodwin and Mr. Slattengren owned the Property through GBR, and raised no objection. *Id*.

Thus, the sole members of GBR, Ms. Goodwin and Mr. Slattengren, had signed the BSA, and they were both willing to close on behalf of GBR. Moreover, Duseks were aware well in advance of closing that GBR owned the Property, and did not terminate the Agreement based upon that fact. *Id*. Finally, GBR is a Plaintiff in this case, supplying the "mutuality of remedy" discussed in *Ingalls*. Pursuant to Montana Code Annotated § 27-1-411 and *Ingalls*, these undisputed facts of record negate any defense by Duseks based upon the fact that GBR did not sign the BSA.

**4. The Contingency Period Expired.**

The BSA provided a limited period during which Duseks could either terminate the BSA and receive a return of their earnest money, or they could elect to negotiate a resolution to specified property conditions which Glacier Bear would then be required to fix. In the language of the BSA:

> Unless Buyer delivers written notice(s) of Buyer's disapproval of the Property conditions on or before (Notice Date) 10/26/2021 at 5:00 p.m. (Mountain Time), this inspection contingency shall be of no further force or effect. **If Buyer disapproves** of the Property condition, Buyer shall deliver written notice to the Seller or the Seller's Broker/Salesperson on or before the date specified above, together with a copy of ONLY that portion of the inspection or report upon which the disapproval is based. Buyer shall also state whether Buyer elects to immediately terminate the Agreement or negotiate a resolution of the conditions noted. **If Buyer elects to negotiate** a resolution of the conditions noted, the notice must contain all of Buyer's objections and requested remedies.

SUF, ¶ 10. As noted above, the Inspection Contingency clause of the BSA included, among other things, "Home/Property Inspection," "Mold" and "Water Rights." *Id*. Duseks elected "to negotiate a resolution of the conditions noted" by delivering the signed Inspection Notice to Glacier Bear on or about October 16, 2021. SUF, ¶¶ 11-13. That notice "must contain all of [Duseks'] objections and requested remedies," and it contained nine such conditions and requested remedies, none of which related to the condition of the water rights or traffic visibility and road noise. SUF, ¶¶ 10, 12.

Ms. Goodwin and Mr. Slattengren promptly signed and returned the Inspection Notice to Duseks through Mr. Darkenwald on October 17, 2021, and immediately commenced the work required under the Inspection Notice. SUF, ¶¶ 15, 17. As the parties had "enter[ed] into a written agreement in satisfaction of the conditions noted, this [inspection] contingency shall be of no further force or effect." SUF, ¶ 10. Thus, as of October 17, 2021: Duseks had inspected the property through D. Quinn Construction (SUF, ¶ 11); Duseks had elected to move forward to closing instead of terminating the BSA (SUF, ¶¶ 11, 13, 15); Duseks had identified all the conditions which they desired that Glacier Bear remedy (SUF, ¶ 12); the parties had agreed that Glacier Bear would make the required remedies (SUF, ¶¶ 13-15); and the inspection contingencies were "of no further force or effect" (SUF, ¶ 10).

Further, as of October 26, 2021, Glacier Bear had, in fact, complied fully with the Inspection Notice as confirmed by D. Quinn Construction's Re-Inspection Report. SUF, ¶¶ 18-20.

**5. Duseks Breached the BSA.**

Despite the parties' agreement that Glacier Bear would remedy the nine conditions specified in the Inspection Notice (instead of terminating the BSA, which was the Duseks' other option to exercise), Duseks notified Glacier Bear and Mr. Darkenwald on October 30, 2021, that they intended not to close on the transaction.

SUF, ¶¶ 23-25. Under any reading of the BSA and the Inspection Notice (which explicitly amended the BSA), Duseks' decision to request that Glacier Bear remedy the nine property conditions negated any further right on their part to withdraw from the BSA based upon the property conditions. However, contrary to the clear and explicit terms of the BSA, that is precisely the position they have taken in this case. As demonstrated by their Answer to Interrogatory No. 4, Duseks' position that they retained the right to terminate the BSA up to October 30, 2021, is premised on a strained and illogical construction of the BSA, and belied by the undisputed factual record before the Court:

> Our understanding was that the Buy-Sell Agreement terminated under its own provisions due to the fact that the parties did not come to written agreement in satisfaction of the conditions that we discovered under the inspection contingency and documented in the Inspection Notice dated October 15, 2021. Additionally, we expressly refused to withdraw, in writing, our disapproval of the conditions noted before the Resolution Date of October 29, 2021.

Duseks' Answer to Interrogatory No. 4 (in part). Contrary to Duseks' interpretation of the BSA, "The contingencies set forth in this Agreement . . . shall be deemed to have been released, waived, or satisfied, and the Agreement shall continue to closing, unless, by 5:00 p.m. (Mountain Time) on the date specified for each contingency, the party requesting that contingency has notified the other party or the other party's Broker/Salesperson in writing that the contingency is not released, waived, or satisfied." SUF, ¶ 9. Moreover, the undisputed factual record demonstrates that the

parties came to a "written agreement in satisfaction of the conditions noted" as documented by the fully executed Inspection Notice. SUF, ¶¶ 10, 13, 15. Once the parties signed the Inspection Notice, "this [inspection] contingency shall be of no further force or effect." SUF, ¶ 10. From that point forward, there was no further opportunity for Duseks to raise new objections to conditions of the Property, including water rights and road or traffic visibility and noise.

Even assuming for sake of argument that Duseks had some right to raise any objection to closing on the BSA (which Glacier Bear denies) at the latest, they had until October 29, 2021 to raise such an objection. SUF, ¶ 10. However, the undisputed factual record reveals that they never provided any written notice of unresolved objections to any condition of the Property until October 30, 2021. SUF, ¶¶ 23-25. Thus, Duseks' attempted withdrawal from the BSA was simply too late.

**6. Glacier Bear is Entitled to Specific Performance.**

The BSA contains a section titled "Seller's Remedies." It provides:

> **SELLER'S REMEDIES:**
>
> If the Seller accepts the offer contained in this Agreement and Buyer refuses or neglects to consummate the transaction anticipated by this Agreement within the time period provided in this Agreement, the Seller may:
>
> (1) Declare the earnest money paid by Buyer to be forfeited whereupon the rights and duties of the Buyer and Seller under this Agreement shall be terminated; **OR**

(2) Demand that Buyer specifically perform Buyer's duties and obligations under this Agreement; **OR**

(3) Demand that Buyer pay monetary damages for Buyer's failure to perform the terms of this Agreement.

SUF, ¶ 27.

Montana law is unequivocal that specific performance is available to a seller when a buyer defaults on an agreement to purchase real property:

> [T]he specific performance of an obligation may be compelled when:
>
> (2) the act to be done is such that pecuniary compensation for its nonperformance would not afford adequate relief; [or]
>
> ***
>
> (4) it has been expressly agreed in writing, between the parties to the contract, that specific performance thereof may be required by either party or that damages shall not be considered adequate relief.

Mont. Code Ann. § 27-1-411. Thus, by statute, and the case law discussed herein, Montana follows the "overwhelming weight of authority" which holds that, "a vendor, as well as a vendee, may obtain specific performance of a contract for the sale of land." *Tombari v. Griepp*, 350 P.2d 452, 454 (Wash. 1960) *citing First National Bank of St. Johnsbury v. Laperle*, 117 Vt. 144, 86 A.2d 635, 641 (Vt. 1952).

This case falls squarely within subparts (2) and (4) of Mont. Code Ann. § 27-1-411. First, Mont. Code Ann. § 27-1-419 creates a presumption that "breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation," such that subsection (2) of Mont. Code Ann. §27-1-411 is satisfied.

Subsection (4) of Mont. Code Ann. § 27-1-411 is also satisfied because the parties expressly agreed in the BSA that specific performance may be required by either party in the event of the other party's breach of the agreement. SUF, ¶ 27. As Mont. Code Ann. § 27-1-411 is phrased in the disjunctive by use of the word "or," either subsection of Mont. Code Ann. § 27-1-411 authorizes this Court to order Duseks to specifically perform their duties under the BSA.

The cases are legion in which the Montana Supreme Court has held that a buyer who defaults under an agreement to purchase real estate should be ordered to specifically perform under the agreement. *Larson v. Undem*, 246 Mont. 336, 343, 805 P.2d 1318, 1323 (1990); *Aveco Properties v. Nicholson*, 229 Mont. 417, 424-25, 747 P.2d 1358, 1362 (1987); *Halcro v. Moon*, 226 Mont. 121, 125, 733 P.2d 1305, 1307 (1987); *Hillstrom v. O'Neill*, 226 Mont. 452, 457, 736 P.2d 126, 129 (1987); *SAS Partnership v. Schafer*, 200 Mont. 478, 486, 653 P.2d 834, 838 (1982). In *Hillstrom*, the Court held, "Section 27–1–411(4), MCA, provides that specific performance may be compelled when the parties to a contract have expressly agreed in writing that specific performance shall be an available remedy. The buy-sell agreement signed by the parties expressly provided for a remedy of specific performance and [sellers] were entitled to pursue this remedy." *Hillstrom,* 736 P.2d at 129.

"[T]his statute [§ 27-1-411(4)] is designed to provide the court with the authority to make an exception to the general rule that a remedy at law must be inadequate before a court may order specific performance." *Marco and Co., LLC v. Deaconess/Billings Clinic Health System*, 1998 MT 26, ¶ 20, 287 Mont. 293, 954 P.2d 1116 (holding that district court erred by failing to award specific performance to vendor under contract for sale of pharmaceuticals, where contract specifically provided that non-breaching party may seek specific performance). "Where the terms of a contract are clear and unambiguous the duty of the court is to apply the language as written to the facts of the case, and decide the case accordingly." *King Resour*ces, *supra*., ¶ 21. The foregoing authorities mandate entry of an order compelling Duseks to specifically perform under the BSA by authorizing the release of the earnest money and paying the balance of the purchase price to GBR at closing in return for a warranty deed to the Property.

While the factual record is undisputed that Glacier Bear performed the repairs required under the Inspection Notice, and the Duseks' notification of their intent to terminate the BSA was in any event untimely, even assuming *arguendo* that there was some condition that wasn't remedied to Duseks' satisfaction (they allege the mold and evidence of moisture were not properly remediated), specific performance is still mandated. In *Halcro*, Moon agreed to purchase Halcros' residential real property. *Halcro*, 733 P.2d at 1305. Prior to the scheduled closing date, Moon

discovered water on the floor of two rooms of the home, and water was later discovered in the crawl space. *Id*. at 1306. Thereafter, "Mr. Halcro promised to warrant in writing that he would undertake further repair and cover all the costs." *Id*. Despite the sellers' assurances that they would remedy the problem, Moon notified the Halcros that he was not going to close on the purchase. *Id*. Halcros then sued Moon for specific performance. *Id.*

On appeal from summary judgment for Halcros ordering specific performance, the Court analyzed "whether the water problems in the house were so substantial as to defeat the object of the contract." *Id*. The Court held that summary judgment for the Halcros was appropriately granted:

> Moon has offered no evidence that the water problems were so substantial as to defeat the object of the contract. Moon claims he was entitled to rescission because he believed the house had substantial plumbing problems. However, the evidence reflects that this was not the case. A pinhole leak was repaired, no structural damage was found, and there have not been any water problems in the house since that time.

*Id.* at 1307. The Court reasoned that:

> A breach which goes to only part of the consideration, is incidental and subordinate to the main purpose of the contract; the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered therefrom.

*Id.* (quoting *Johnson v. Meiers*, 118 Mont. 258, 263, 164 P.2d 1012, 1014 (1946).

Here, the alleged breach – failure to adequately remediate the mold and rid a small location of the home of excessive moisture (according to Duseks) – is

incidental and subordinate to the main purpose of the BSA, the intent of which was to effectuate the transfer of Glacier Bear's interest in the Property to Duseks. Further, as in *Halcro* where the sellers promised to fix the plumbing problems, Glacier Bear promised Duseks in writing via the Inspection Notice that they would remedy the mold and excess moisture, and Duseks' remedy for any alleged breach of that part of the agreement was a claim for damages, not the right to escape performing their obligations under the BSA. SUF, ¶¶ 14-15. In addition, the contractor who remediated the mold at the Property (Advanced Restoration) guaranteed its work and was obligated to clean up any mold that wasn't remediated after the initial work at the Property. SUF, ¶ 17. Duseks were thus fully protected under the terms of the BSA, and Montana law, from any perceived problem with mold and excess moisture in the Property.

Further, Glacier Bear had until 5:00 p.m. (Mountain Time) on November 5, 2021, to remediate the mold. SUF, ¶ 12. However, instead of notifying Glacier Bear of their alleged lingering concerns about the mold, Duseks inappropriately purported to terminate the BSA on October 30, 2021, six days prior to the November 5th deadline for Glacier Bear to complete its repairs.

The foregoing authorities align with the facts of this case to support an order of specific performance of Duseks' obligation under the BSA to pay to Glacier Bear the cash due at closing, plus the earnest money on deposit with the escrow agent, in

return for a warranty deed from GBR for its interest in the Property. Glacier Bear was and remains ready, willing and able to perform its obligation to convey the Property to Duseks.

### 7. The Court should enter summary judgment for Glacier Bear on Duseks' Counterclaim.

Duseks counterclaimed for recovery of their earnest money. See Doc. 17 at 6. If the Court grants Glacier Bear's motion, then Duseks will not be entitled to recover their earnest money as it will be delivered to GBR at the closing. Summary judgment should enter for Glacier Bear on Duseks' counterclaims.

### 8. Glacier Bear is Entitled to Attorney's Fees.

The Buy-Sell Agreement provides:

> **ATTORNEY FEE:** In any action brought by the Buyer or Seller to enforce any of the terms of this Agreement, the prevailing party in such action shall be entitled to such reasonable attorney fees as the court or arbitrator shall determine just.

SUF, ¶ 28. If the Court grants Glacier Bear's motion, then Glacier Bear is entitled to recover its attorney's fees as the prevailing party as use of the word "shall" is mandatory. *See Bell v. Richards*, 228 Mont. 215, 741 P.2d 788, 791 (1987) (holding that district court erred in denying motion to alter or amend judgment to include attorney's fees where contract clearly provided for award of attorney's fees to prevailing party).

## CONCLUSION

Based upon the undisputed factual record, and the argument set forth herein, Glacier Bear respectfully requests the Court to grant its motion for summary judgment.

DATED this 28th day of July, 2022.

JENKS & SIMPSON, P.C.

By /s/Fred Simpson
Fred Simpson
*Attorneys for Plaintiffs and*
*Counterclaim Defendants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that Plaintiff's Brief in Support of Motion for Summary Judgment is in compliance with Local Rule 7.1(d)(2). The text is proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and word count calculated by Word 365 is 5,769 words, excluding the caption, Table of Contents, Certificate of Service, and Certificate of Compliance.

DATED this 28th day of July, 2022.

JENKS & SIMPSON, P.C.

By /s/Fred Simpson
Fred Simpson

## CERTIFICATE OF SERVICE

I certify on this 28th day of July, 2022, a copy of the foregoing document was served upon the following persons by the following means as indicated below:

| | |
|---|---|
| **[X] CM/ECF**<br>[...] Mail<br>[ ] Hand Delivery<br>[ ] Overnight Delivery Service<br>[...] Fax<br>[ ] Email | Clerk, U.S. District Court |
| **[X] CM/ECF**<br>[...] Mail<br>[ ] Hand Delivery<br>[ ] Overnight Delivery Service<br>[...] Fax<br>[ ] Email | Shane P. Coleman, Esq.<br>BILLSTEIN, MONSON & SMALL, PLLC<br>1555 Campus Way, Suite 201<br>Billings, MT 59102<br>Telephone: 406-656-6551<br>shane@bmslawmt.com<br>*Attorney for Defendants and Counterclaimants* |

DATED this 28th day of July, 2022.

JENKS & SIMPSON, P.C.

By___/s/Fred Simpson_____
Fred Simpson
*Attorneys for Plaintiffs and Counterclaim Defendants*