Fred Simpson, Esq.
JENKS & SIMPSON, P.C.
1821 South Ave. W, Suite 204
Missoula, MT 59801
Telephone: (406) 549-2322
Facsimile: (406) 549-2707
Email: fsimpson@jenkssimpson.legal
*Attorneys for Plaintiffs and Counterclaim Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| GLACIER BEAR RETREAT, LLC, GAIL L. GOODWIN and DARRYL C. SLATTENGREN,<br><br>Plaintiffs/Counterclaim Defendants,<br><br>vs.<br><br>MATT DUSEK AND RACHEL DUSEK,<br><br>Defendants/Counterclaimants. | Cause No. CV 22-19-M-KLD<br><br>**PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant to L.R. 56.1(a), Plaintiffs Glacier Bear Retreat, LLC ("GBR"), Gail L. Goodwin ("Ms. Goodwin") and Darryl C. Slattengren ("Mr. Slattengren") (collectively, "Glacier Bear") submit this Statement of Undisputed Facts in support

of their Motion for Partial Summary Judgment against Defendants Matt Dusek ("Mr. Dusek") and Rachel Dusek ("Ms. Dusek") (collectively, "Duseks"):

1. At all times relevant to this case, GBR was the owner of real property commonly known as 348 Grist Road, West Glacier, MT 59936 and legally described as follows (the "Property"):

> Tract 1 of COS #19007 (situated, lying and being in Gov. Lot 2 of Section 14, Township 32N, Range 19W, P.M.M.) according to the map, plat or survey thereof on file and of record in the office of the Clerk and Recorder of Flathead County, Montana.

Declaration of Gail Goodwin, ¶ 3 (July 27, 2022) (attached as **Exhibit A**).

2. At all times relevant to this case, Ms. Goodwin and Mr. Slattengren, wife and husband, were the sole members of GBR. Decl. G. Goodwin, ¶¶ 2, 5; Declaration of Darryl Slattengren, ¶ 2 (July 26, 2022) (attached as **Exhibit B**).

3. Ms. Goodwin and Mr. Slattengren listed the Property for sale with real estate broker Scott Darkenwald ("Mr. Darkenwald") of Glacier Sotheby's International Realty on or about September 1, 2021. Decl. G. Goodwin, ¶ 6. GBR was the record owner of the Property, but due to confusion arising from Flathead County not having the property owner tax information up to date, the Property was listed with Ms. Goodwin and Mr. Slattengren as the owners of the Property, rather than GBR. *Id*.

4. On or about October 5, 2021, Ms. Goodwin and Mr. Slattengren, as Sellers, entered a Buy-Sell Agreement (the "BSA" or "Agreement") with Duseks,

as Buyers, for the sale and purchase of the Property. SSF, ¶ 6; Decl. G. Goodwin, ¶ 7; Deposition of Matthew Dusek, 35:1-6 (July 5, 2022) (relevant portions of Mr. Dusek's deposition are attached as **Exhibit C**). A true and correct copy of the BSA, with the price terms redacted to preserve the confidentiality of that information, is attached hereto as **Exhibit D**. (The identical copy is Exhibit A to Statement of Stipulated Facts ("SSF"), ¶ 6 (Doc. 15).

5. Duseks deposited a portion of the purchase price into escrow, and the balance was due in cash at the closing. Depo. M. Dusek, 40:12-22. The BSA provided for a closing on or before November 9, 2021. Exhibit D, BSA, at 1, ll. 28-44.

6. Duseks were notified by Mr. Darkenwald after they signed the BSA that the Property was owned by GBR, and this was confirmed by the preliminary title commitment. Depo. M. Dusek, 62:11-63:4. This was not an issue that caused Duseks to terminate the BSA. *Id*. Ms. Goodwin and Mr. Slattengren notified Duseks of their intention to close on the BSA on behalf of GBR. Decl. of G. Goodwin, ¶ 12.

7. Early on in the process, Mr. Darkenwald notified Duseks that there was an outstanding issue with water rights for the Property. Depo. M. Dusek, 24:2-14; Deposition of Scott Darkenwald, 44:9-22 (May 26, 2022) (relevant portions of Mr. Darkenwald's deposition are attached as **Exhibit E**). The BSA

provided for additional time for Glacier Bear to formalize the water rights attendant the Property. Ex. D, BSA at 5, ll. 236-239, Depo. S. Darkenwald Depo., 44:23-45:3.

8. Despite Mr. Darkenwald's concern that resolving this issue might delay the closing, it was resolved by issuance of a water rights permit by the Montana Department of Natural Resources and Conservation ("DNRC"). Mr. Darkenwald notified Duseks of this development on October 12, 2021, and on that date, provided them with the water rights abstract issued by DNRC. Depo. S. Darkenwald Depo., 45:4-46:23; 90:23-93:13; Depo. M. Dusek, 66:19-67:16; 68:12-15. The water rights abstract and well log were produced by Glacier Sotheby's International Realty in response to a Subpoena Duces Tecum as GSIR SDT 551-554, which was included as Exhibit 1 at Mr. Darkenwald's deposition. Relevant portions of the Glacier Sotheby's file are (including the water rights abstract and well log) are attached as Exhibit 1 to the Declaration of Fred Simpson, which is attached as **Exhibit F**. The only person with whom Duseks communicated to investigate water rights attendant the Property was Mr. Darkenwald. Depo. M. Dusek, 68:5-10; Duseks' Answer to Interrogatory No. 5 (the relevant portions of Duseks' discovery responses are attached as **Exhibit G**).

9. The BSA provided a number of contingencies to closing:

> **CONTINGENCIES:** The contingencies set forth in this Agreement or on attached addenda shall be deemed to have been released,

> waived, or satisfied, and the Agreement shall continue to closing, unless, by 5:00 p.m. (Mountain Time) on the date specified for each contingency, the party requesting that contingency has notified the other party or the other party's Broker/Salesperson in writing that the contingency is not released, waived, or satisfied. If a party has notified the other party on or before the release date that a contingency is not released, waived, or satisfied, this Agreement is terminated, and the earnest money will be returned to the Buyer, unless the parties negotiate other terms or provisions.
>
> **INSPECTION CONTINGENCY:**
> **[x]** This Agreement is contingent upon Buyer's acceptance of any Property conditions that Buyer deems appropriate, including but not limited to any inspections or advice listed below. Buyer agrees to acquire, at Buyer's own expense, independent inspections or advice from qualified inspectors or advisors of Buyer's choice . . .

Ex. D, BSA at 3, ll. 132-149.

10. Immediately following this paragraph was a list of property conditions for which Duseks had the right to perform inspections and seek advice, including, (as relevant to this case):

> Home/Property Inspection
>
> Mold
>
> Water Rights

*Id*. at 3-4, ll. 151-169. Under the BSA, Duseks also "reserve[d] the right to visit property in person during the inspection period." *Id*. at 5, ll. 244.

The BSA then provided:

> Unless Buyer delivers written notice(s) of Buyer's disapproval of the Property conditions on or before (Notice Date) 10/26/2021 at 5:00 p.m. (Mountain Time), this inspection contingency shall be of no

> further force or effect. **If Buyer disapproves** of the Property condition, Buyer shall deliver written notice to the Seller or the Seller's Broker/Salesperson on or before the date specified above, together with a copy of ONLY that portion of the inspection or report upon which the disapproval is based. Buyer shall also state whether Buyer elects to immediately terminate the Agreement or negotiate a resolution of the conditions noted. **If Buyer elects to negotiate** a resolution of the conditions noted, the notice must contain all of Buyer's objections and requested remedies.
>
> If the parties enter into a written agreement in satisfaction of the conditions noted, this contingency shall be of no further force or effect. If the parties cannot come to written agreement in satisfaction of the conditions noted or if the Buyer does not withdraw, in writing, his/her disapproval of the condition noted, on or before (Resolution Date) 10/29/2021 at 5:00 p.m. (Mountain Time), the earnest money shall be returned to the Buyer, and the Agreement then terminated.

*Id*. at 4, ll. 171-184 (emphasis in original). The BSA also provided that "This Agreement is contingent upon All well related permitting, well log recording, and any associated water rights to be in place prior to closing. Reasonable extension for contingency and closing to be granted upon reasonable written request." A "release date" of November 3, 2021 at 5:00 p.m. (Mountain Time) was provided for the water rights to be in place. *Id*. at 5, ll. 236-240.

11. After obtaining a property inspection from D. Quinn Construction, Inc., and already having the water rights abstract from DNRC in hand, Duseks, through Mr. Darkenwald, provided Glacier Bear with a document labeled "Inspection Notice (Results/Remedies)" (the "Inspection Notice") on or about October 16, 2021. Decl. G. Goodwin, ¶ 8; Depo. S. Darkenwald Depo., 45:4-

46:23; 90:23-93:13; Depo. M. Dusek, 64:2-20, 66:19-67:16. The Inspection Notice provided two boxes from which Duseks could select one. One option allowed Duseks to terminate the BSA immediately and receive a return of their earnest money. Alternatively, the other option provided, "Buyer elects to negotiate the items of disapproval described above and offers the following resolution: Seller, at seller's expense, to remedy the following [list of nine conditions]." The Inspection Notice is Exhibit B to the SSF, and attached hereto as **Exhibit H**. Instead of immediately terminating the BSA and receiving a return of their earnest money, Duseks selected this latter option. Ex. H, Inspection Notice at 2, ll. 54; Depo. M. Dusek, 81:9-82:4.

12. The Inspection Notice enumerated the nine different conditions of the Property that Duseks requested Glacier Bear to repair or remedy which were drawn directly from Quinn's report. Depo. M. Dusek, 79:21-80:15. Those conditions included: drainage, siding condition, flashing, evidence of moisture, mold build-up, stairs (railing in guest house), valley flashing, insulation, and evidence of leakage. Ex. H, Inspection Notice at 2, ll. 56-75. However, nowhere in the Inspection Notice did Duseks raise any concern or objection to the water rights appurtenant to the Property, even though "Water Rights" was a condition listed in the "Inspection Contingency" paragraph. Ex. H, Inspection Notice at 1-2; Ex. D, BSA at 4, ll. 166. The Inspection Notice also provided, "If Seller and Buyer agree

to the remedies specified above, this document shall constitute an amendment to the Buy-Sell Agreement referred to above and shall be an integral part of this transaction. Seller shall complete all agreed upon resolution(s) to the condition(s) and problem(s) identified above by 5:00 p.m. (Mountain Time) on 11/05/2021." Ex. H, Inspection Notice at 2, ll. 79-82; Depo. M. Dusek, 81:16-82:4.

13. Duseks signed and dated the Inspection Notice on October 15, 2021. Depo. M. Dusek, 80:1-9; SSF, ¶ 7.

14. Mr. Darkenwald discussed what was required under the Inspection Notice with Ms. Goodwin. Ms. Goodwin's response was, "fix whatever needs to be fixed, or we'll – we will fix whatever needs to be fixed." Depo. S. Darkenwald 64:16-24. There was no reservation on her part about moving forward to complete the repairs. *Id.*, 64:25-65:2; Decl. of G. Goodwin, ¶¶ 9-10; Decl. of D. Slattengren, ¶ 6.

15. Ms. Goodwin and Mr. Slattengren signed and dated the Inspection Notice on October 17, 2021, and returned it to Duseks through Mr. Darkenwald that same day. Decl. G. Goodwin, ¶ 9; Decl. D. Slattengren, ¶ 5; Depo. S. Darkenwald, 65:3-14. Mr. Darkenwald forwarded the fully executed Inspection Notice to Duseks the following day. Depo. S. Darkenwald, 65:11-17. Duseks received the fully executed Inspection Notice on October 18, 2021. Depo. M. Dusek, 82:5-83:2.

16. Duseks sole personal inspection of the Property occurred on October 19, 2021. Depo. S. Darkenwald, 82:4-7; Depo. M. Dusek, 114:12-22. They told Mr. Darkenwald that they more excited about the purchase than before they had arrived. Depo. S. Darkenwald, 84:12-23.

17. Ms. Goodwin took immediate steps to perform the work required by the Inspection Notice by hiring the necessary contractors. Decl. G. Goodwin, ¶ 10. As required by the Inspection Notice, she hired Cory Rensmon at Advanced Restoration to repair the siding condition, flashing, evidence of moisture and mold build-up as those items were identified in the Inspection Notice. *Id*. The work was completed on or about October 26, 2021. *Id*. GBR spent a total of $30,319.75 on the repairs, including $25,244 on mold and moisture remediation performed by Mr. Rensmon at Advanced Restoration. *Id*. Mr. Darkenwald notified Mr. Dusek, by email of October 14, 2021, that Mr. Rensmon "guarantees his work[.]" Depo. M. Dusek, 130:14-22. Mr. Darkenwald's email to Mr. Dusek of October 14, 2021, which was marked as Exhibit 10 at Mr. Dusek's deposition, is attached as Exhibit 2 to the Declaration of Fred Simpson.

18. D. Quinn Construction then returned to the property to perform a re-inspection. It issued a report of its re-inspection dated October 27, 2021. D. Quinn's Re-inspection Report was produced by Glacier Sotheby's International Realty in response to a Subpoena Duces Tecum, and marked as Exhibit 1 at the

Deposition of Scott Darkenwald. The Re-Inspection Report (Bates numbered GSIR SDT 709-759[1]) is attached as Exhibit 3 to the Declaration of Fred Simpson. That report confirmed that the repairs to each of the nine items listed in the Inspection Notice had been completed satisfactorily. Exhibit 3, GSIR SDT 712 (Drainage/gutter extension); GSIR SDT 709 (Siding Condition); GSIR SDT 709 (Flashing); GSIR SDT 731 (Evidence of moisture); GSIR SDT 710 (Mold build-up); GSIR SDT 711 (Stairs- railing in guest house); GSIR SDT 712 (Valley Flashing); GSIR SDT 713 (Insulation); and GSIR SDT 714 (Evidence of Leakage). Mr. Dusek confirmed his agreement that all such items had been satisfactorily repaired, with the exception of "evidence of moisture" and "mold build-up." Depo. M. Dusek, 107:2-21; 108:11-109:5.

19. Concerning the "evidence of moisture," D. Quinn's Re-Inspection Report provides, "Satisfactory" and "Note evidence of moisture and water stains located main level closet under the stair area during the original inspection as (*sic*) been corrected and was dry at time of inspection with the flashing and siding issue having been corrected." Ex. 3 to Declaration of F. Simpson, GSIR SDT 731; Depo. M. Dusek, 120:4-20.

20. Concerning the "mold build-up," D. Quinn's Re-Inspection Report provides that it was, "Satisfactory" and "Note the water stains and possible surface

[1] Due to an apparent copying error, some of the pages in the report appear out of sequence in the GSIR production.

fungal growth that was found at main level closet under the stairs during the original inspection does appear to have been properly treated and remediated. The insulation and vapor barrier was yet to be installed to allow for visual inspection[n] and was scheduled to be done." Ex. 3 to Declaration of F. Simpson, GSIR SDT 710.

21. On October 25, 2021, Mr. Darkenwald had a conversation with Duseks during which they told him where "Rachel and I stood with regard to purchasing the transaction and some concerns we had and that we were contemplating terminating the transaction and wanted to review with him, as our agent." Depo. M. Dusek, 42:12-17. Ms. Goodwin and Mr. Slattengren were not made aware of this conversation until after the current lawsuit was filed. Decl. G. Goodwin, ¶ 12. Mr. Darkenwald told Mr. Dusek of his opinion that Duseks would have a problem with "seller's remedies" as he believed that Ms. Goodwin and Mr. Slattengren had complied with the Inspection Notice. Depo. S. Darkenwald, 97:6-99:18. He advised Duseks twice on October 25th, that their "contingencies are gone" and to have their attorney "look at Inspection contingency & Seller's Remedies in writing." *Id*., 98:12-99:18. Mr. Darkenwald then confirmed that Tom Burk, the president of his company, Glacier Sotheby's International Realty, and Jaymie Bowditch, Glacier Sotheby's counsel, agreed with his assessment. *Id*., 100:5-102:2. It was Mr. Darkenwald's opinion that as of October 25, 2021, Ms.

Goodwin and Mr. Slattengren had complied with their obligations under the Inspection Notice and BSA, that it was too late for Duseks to back out of the Agreement, and at best they would lose their earnest money. *Id*., 101:18-103:2.

22. On October 26, 2021, Mr. Dusek "called and told [Mr. Darkenwald] he was going to go forward" and that Mr. Darkenwald could so inform Ms. Goodwin." Depo. S. Darkenwald, 100:12-20. Mr. Dusek concurs that during his discussion with Mr. Darkenwald on October 26, 2021, he told Mr. Darkenwald, "We were going to proceed toward closing, which is to say we were going to continue forward – we still – you know, pending all the work that was ongoing." Depo. M. Dusek, 48:13-20.

23. On October 30, 2021, Mr. Dusek emailed two letters dated October 30, 2021, to Mr. Darkenwald purporting to terminate the BSA and demanding a return of Duseks' earnest money. Depo., M. Dusek, 87:8-88:2; Depo. S. Darkenwald 117:20-118:24. Those letters, which were also produced by Glacier Sotheby's International Realty in response to a Subpoena Duces Tecum as GSIR 1297-1298, and were included as Exhibit 1 at Mr. Darkenwald's deposition. They are attached hereto as Exhibit 4 to the Declaration of Fred Simpson. These letters were the first notice from Duseks to Glacier Bear that they intended not to close on the transaction. Depo. S. Darkenwald, 118:16-24; Depo. M. Dusek, 123:7-12.

24. Duseks explained their reasons for backing out of the BSA as follows:

> As we are unable to come to written agreement in satisfaction of the conditions noted, and as we did not withdraw, in writing, our disapproval of the conditions noted on or before the stipulated Resolution Date (10/29/2021 at 5:00 PM MT), we expect that the earnest money shall be returned to us and the Agreement then terminated.

Ex. 4, GSIR SDT 1298. The second letter provided additional grounds:

> [W]e hereby serve notice of our disapproval of the Property conditions and do not wish to proceed with the purchase – we elect to immediately terminate the Agreement.
>
> In this decision, we are specifically relying on our reserved rights under the agreement to contingencies based on:
>
> **Well Related Permitting/Water Rights** (line 273)
> We don't find the water rights of the property to our satisfaction.
>
> **Additional Provisions – Personal Inspection/Property Visitation** (line 245)
> We don't find the visibility and noise of traffic on Camas Rd. adjacent to the Property to our satisfaction.

Ex. 4, GSIR 1297.

25. These letters of October 30, 2021 were the first notice to Mr. Darkenwald or GBR that Duseks had any objection to the water rights, as well as visibility and noise of traffic on Camas Road. Depo. S. Darkenwald, 119:1-120:5; Depo. M. Dusek, 122:20-123:12. Duseks' notice was untimely; at the latest, they had until 5:00 p.m., Mountain Time, on October 26, 2021, to terminate the BSA, or even under their interpretation of the Agreement, until 5:00 p.m., Mountain Time, on October 29, 2021. Ex., D, BSA at 4, ll. 171-184,

26. Duseks have the financial resources to close on the purchase of the Property if so ordered by the Court. Depo. M. Dusek, 29:14-17.

27. The BSA contains a section titled “Seller’s Remedies.” It provides:

> **SELLER’S REMEDIES:**
>
> If the Seller accepts the offer contained in this Agreement and Buyer refuses or neglects to consummate the transaction anticipated by this Agreement within the time period provided in this Agreement, the Seller may:
>
> > (1) Declare the earnest money paid by Buyer to be forfeited whereupon the rights and duties of the Buyer and Seller under this Agreement shall be terminated; **OR**
> >
> > (2) Demand that Buyer specifically perform Buyer’s duties and obligations under this Agreement; **OR**
> >
> > (3) Demand that Buyer pay monetary damages for Buyer’s failure to perform the terms of this Agreement.

Ex. D, BSA at 7, ll. 386-392.

28. The Buy-Sell Agreement provides:

> **ATTORNEY FEE:** In any action brought by the Buyer or Seller to enforce any of the terms of this Agreement, the prevailing party in such action shall be entitled to such reasonable attorney fees as the court or arbitrator shall determine just.

Ex. D, BSA at 8, ll. 427-429.

//

//

DATED this 28th day of July, 2022.

JENKS & SIMPSON, P.C.

By /s/Fred Simpson
Fred Simpson
*Attorneys for Plaintiffs and Counterclaim Defendants*

## CERTIFICATE OF SERVICE

I certify on this ___ day of July, 2022, a copy of the foregoing document was served upon the following persons by the following means as indicated below:

| | |
|---|---|
| **[X] CM/ECF**<br>[...] Mail<br>[ ] Hand Delivery<br>[ ] Overnight Delivery Service<br>[...] Fax<br>[ ] Email | Clerk, U.S. District Court |
| **[X] CM/ECF**<br>[...] Mail<br>[ ] Hand Delivery<br>[ ] Overnight Delivery Service<br>[...] Fax<br>[ ] Email | Shane P. Coleman, Esq.<br>BILLSTEIN, MONSON & SMALL, PLLC<br>1555 Campus Way, Suite 201<br>Billings, MT 59102<br>Telephone: 406-656-6551<br>shane@bmslawmt.com<br>*Attorney for Defendants and Counterclaimants* |

DATED this 28th day of July, 2022.

JENKS & SIMPSON, P.C.

By /s/ Fred Simpson
Fred Simpson
*Attorneys for Plaintiffs and Counterclaim Defendants*