Fred Simpson, Esq.
Hall & Evans, LLC
Millennium Building, Ste. 403
125 Bank Street
Missoula, MT 59801
Telephone: (406) 532-2635
Facsimile: (406) 519-2035
Email: simpsonf@hallevans.com

*Attorneys for Plaintiffs and Counterclaim Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| GLACIER BEAR RETREAT, LLC, GAIL L. GOODWIN and DARRYL C. SLATTENGREN,<br><br>Plaintiffs/Counterclaim Defendants,<br><br>vs.<br><br>MATT DUSEK AND RACHEL DUSEK,<br><br>Defendants/Counterclaimants. | Cause No. CV 22-19-M-KLD<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiffs Gail L. Goodwin ("Ms. Goodwin"), Darryl C. Slattengren ("Mr. Slattengren") and Glacier Bear Retreat, LLC, ("GBR") (collectively, "Glacier Bear") file this Reply Brief in support of their Motion for Partial Summary Judgment. Defendants Matt Dusek ("Mr. Dusek") and Rachel Dusek ("Ms.

Dusek") (collectively, "Duseks"), have failed to raise a genuine issue of material fact. Duseks' opposition hinges on everything from inadmissible hearsay (chiefly, the mold report authored by D. Quinn Construction), to their misinterpretation of the clear and unambiguous terms of the Buy-Sell Agreement (the "BSA"), to problems created by the timing of their decision to visit the Property after the parties executed the Inspection Notice. To achieve their desired results, Duseks ask this Court to engage in a prohibited re-writing of the parties' BSA to include terms they now wish had been included in that agreement, but were not, and to ignore their untimely attempt to terminate the BSA. Glacier Bear's motion should be granted, and the Duseks ordered to specifically perform by closing on the BSA.

## ARGUMENT

Duseks ask the Court to excuse their default under the BSA for three main reasons:

1. The water rights were provisional, but Duseks desired permanent water rights;

2. The mold and moisture that Glacier Bear remediated through the Duseks' hand-picked contractor, Advanced Restoration/Cory Rensmon, allegedly was not cleaned up to Duseks' satisfaction; and

3. Duseks' were dissatisfied with their personal property inspection.

None of these excuses passes muster when the clear and unambiguous terms of the BSA, as amended by the Inspection Notice, are applied to the undisputed facts of this case.

First, the BSA did not require that any particular classification (permanent v. provisional) of water rights be conveyed to Duseks; in fact, the only water rights that they were entitled to receive were "any associated" with the property. Doc. 27, ¶ 10. The water rights "associated" with the property were provisional, and GBR stood ready, willing and able to transfer them to Duseks at closing. Doc. 27, ¶¶ 6, 8; Doc. 27-1, ¶ 13. Further, Duseks do not deny that those water rights and well log were "in place" prior to closing. Because the water rights were "in place" and were capable of being transferred at closing, Duseks cannot avoid their obligation to close based upon this issue.

With regard to the mold and moisture, the inspection "contingencies" were resolved once the parties executed the Inspection Notice. Doc. 27 at ¶¶ 10-11. Under the plain language of the BSA, there were no further "contingencies" upon which Duseks could rely to avoid closing on the BSA once Glacier Bear agreed to, and in fact did, repair the mold and moisture. If Duseks were concerned that the mold and moisture remediation had not been performed satisfactorily, their remedy was to seek damages, not to avoid their obligations under the BSA. *Halcro v. Moon*, 226 Mont. 121, 733 P.2d 1305 (1987).

Further, Duseks have presented only inadmissible hearsay that the mold and moisture were not satisfactorily remediated. Inadmissible hearsay is insufficient to raise a genuine issue of material fact. *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091-92 (9th Cir. 1990); *Washington v. UPS*, 2022 U.S. Dist. LEXIS 98789, *8 (D. Mont. June 2, 2022). In the absence of admissible evidence, Duseks have failed to raise a genuine issue of material fact sufficient to defeat Glacier Bear's motion.

Finally, there was no "Personal Visitation Contingency" in the BSA. While Duseks "reserved the right" to visit the Property, and undisputedly exercised that right without any interference by Glacier Bear, that right to visit did not grant them additional rights to withhold approval from closing, unless it was done in conjunction with the Inspection Contingencies deadline of October 26, 2021. The Inspection Contingencies were resolved by execution of the Inspection Notice on or about October 17, 2021. Doc. 27 at ¶ 15. At the latest, Duseks had until 5:00 p.m. on October 26, 2021 to withdraw from the BSA based upon any concerns they had upon their inspection of the Property. Doc. 27 at ¶ 10. As they did not attempt to exercise that right until October 30, 2021, their attempted termination based upon their visit to the property was untimely. Doc. 27 at ¶ 23.

\\\\

## 1. The Water Rights Condition was Satisfied.

Duseks are attempting to add conditions to their obligation to close that are not included in the BSA, including that the water rights be "permanent," rather than provisional, and that they were to be "provided" with the well-log and other water rights information even though they never requested it. In this, as in other regards, the BSA is clear and explicit:

> This Agreement is contingent upon All (sic) well related permitting, well log recording, and any associated water rights to be in place prior to closing. Reasonable extension for contingency and closing to be granted upon reasonable written request.

Doc. 27 at ¶ 10.

Duseks do not claim that they ever requested any additional water rights information prior to sending their termination letters on October 30, 2021. See Doc. 29 at pp. 6-7. Moreover, they do not dispute that they were provided with a water rights abstract by their real estate agent, Scott Darkenwald, on October 12, 2021. Doc. 27 at ¶ 8; Doc. 29 at ¶¶ 97-98. Further, the well-log was also "in place," and a copy of that document was in Mr. Darkenwald's file. See, Doc. 27 at ¶ 8; Doc. 29 at ¶ 104. As Duseks' agent, Mr. Darkenwald's knowledge of the well log was imputed to them, even if Mr. Darkenwald had not communicated that information to Duseks. *Payne v. Hall*, 2020 MT 46, ¶ 15, 399 Mont. 91, 458 P.3d 1001 (citing Mont. Code Ann. § 28-10-604).

Further, the BSA provided that a “[r]easonable extension for contingency and closing to be granted upon reasonable written request” to Glacier Bear to provide the necessary water rights information. Instead of notifying Glacier Bear that they believed they did not have all the necessary information and giving Glacier Bear the “reasonable extension” called for in the BSA, Duseks simply terminated the agreement, and by doing so, breached the BSA.

Duseks complain that the water rights Glacier Bear intended to transfer to them were, at the time, provisional, rather than permanent. However, the BSA did not require Glacier Bear to transfer “permanent” water rights to Duseks; it only required “*any* associated water rights to be in place prior to closing.” Doc. 27 at ¶ 10 (emphasis added). Webster’s defines “any” as “one, some or all indiscriminately of whatever quantity[.]” Webster’s Collegiate Dictionary, Tenth Ed. Thus, “any associated water rights” could mean permanent or provisional, as long as they were in place prior to closing. Duseks do not dispute that those water rights were “in place” prior to closing.

Where the language of a contract is clear and unambiguous, “the court must apply the language as written.” *Watters v. City of Billings*, 2017 MT 211, ¶ 16, 388 Mont. 376, 404 P.3d 379 (citations omitted). Here, the clear and unambiguous terms of the BSA did not grant Duseks a right to a permanent water right as a condition to closing. Because it is undisputed that those water rights were in place

before closing (and thereafter would have been assigned to Duseks), Glacier Bear is entitled to summary judgment on this issue.

## 2. Alleged Mold and Moisture do not Relieve Duseks from Closing.

### a. The Inspection Contingencies were Resolved by Execution of the Inspection Notice.

Like their argument concerning water rights, Duseks would have this Court read language into the BSA that doesn't exist. According to Duseks, the BSA provided two sets of contingency deadlines with respect to the inspection contingencies, the first being "[t]he BSA stated a deadline of October 26, 2021 for Duseks to object to a property condition" (Doc. 28 at 11) and a "Property Condition Inspection Contingency release date [of] November 5, 2021" (Doc. 28 at 1), although the BSA contains no such mention of a "Property Condition Inspection Contingency."

The BSA provides for a <u>single</u> inspection contingency deadline:

> Unless Buyer delivers written notice(s) of Buyer's disapproval of the Property conditions on or before (Notice Date) <u>10/26/2021</u> at 5:00 p.m. (Mountain Time), this inspection contingency shall be of no further force or effect. **If Buyer disapproves** of the Property condition, Buyer shall deliver written notice to the Seller or the Seller's Broker/Salesperson on or before the date specified above, together with a copy of ONLY that portion of the inspection or report upon which the disapproval is based. Buyer shall also state whether Buyer elects to immediately terminate the Agreement or negotiate a resolution of the conditions noted. **If Buyer elects to negotiate** a resolution of the conditions noted, the notice must contain all of Buyer's objections and requested remedies.

> If the parties enter into a written agreement in satisfaction of the conditions noted, this contingency shall be of no further force or effect. If the parties cannot come to written agreement in satisfaction of the conditions noted or if the Buyer does not withdraw, in writing, his/her disapproval of the condition noted, on or before (Resolution Date) 10/29/2021 at 5:00 p.m. (Mountain Time), the earnest money shall be returned to the Buyer, and the Agreement then terminated.

Doc. 27 at ¶ 10.

As discussed at length in Glacier Bear's opening brief, Duseks sent Glacier Bear an Inspection Notice signed by Duseks on October 15, 2021. That Inspection Notice specifically provided that Duseks "elect[] to negotiate the items of disapproval described above and offer[] the following resolution: Seller, at seller's expense, to remedy the following [list of nine conditions]." Doc. 27 at ¶ 11. Ms. Goodwin and Mr. Slattengren signed and returned the Inspection Notice on October 17, 2021. Doc. 27 at 15. At this point, upon signing the Inspection Notice, in the language of the BSA, the parties had "enter[ed] into a written agreement in satisfaction of the conditions noted" such that "this [inspection] contingency shall be of no further force or effect." That this was the "written agreement in satisfaction of the conditions noted" is confirmed by the Inspection Notice which provides, "If Seller and Buyer agree to the remedies specified above, this document shall constitute an amendment to the Buy-Sell Agreement referred to above and shall be an integral part of this transaction. Seller shall complete all agreed upon resolution(s) to the condition(s) and problem(s) identified above by

5:00 p.m. (Mountain Time) on 11/05/2021." Nothing in the Inspection Notice provides for any further conditions or contingencies.

Duseks offer no reasonable alternative interpretation of the Inspection Notice. Instead, they claim (without reference to any provision of the BSA), that execution of the Inspection Notice simply started another set of contingency deadlines running for them to terminate the agreement. But no provision in the BSA or the Inspection Notice specifically grants them that right. While Glacier Bear agreed under the Inspection Notice to complete the repairs by 5:00 p.m. on November 5th, Duseks did not have the right to terminate the BSA simply because they deemed the quality of the repairs unsatisfactory.

The repairs listed in the Inspection Notice weren't contingencies or conditions to closing. Instead, they were contractual duties that Plaintiffs agreed to, and did, perform. The remedy for breach of those duties was a claim for damages, not the right to withdraw from the BSA. *Halcro, supra.*, 733 P.2d at 1307. While Duseks contend that *Halcro* is distinguishable (it is not), they ignore the controlling principle of that case: "[a] breach which goes to only part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract; the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consist of the damages he has suffered therefrom." *Halcro*,

733 P.2d at 1307 (citation omitted). Duseks offer no rational explanation as to why that rule does not apply to this case. Glacier Bear contracted to remediate the mold and moisture as part of the broader contract to convey Glacier Bear's interest in the Property to Duseks in return for payment of the purchase price by Duseks. The mold and moisture remediation were thus "incidental and subordinate" to the main purpose of the contract such that Duseks were "still bound to perform [their] part of the agreement, and [their] only remedy for the breach consist[s] of the damages [they have] suffered therefrom." Just like the recalcitrant buyer who was ordered to specifically perform in *Halcro*, Duseks may not escape their contractual duties under these circumstances.

**b. D. Quinn's Mold Report and Statements to Matt Dusek do not Raise a Genuine Issue of Material Fact.**

Even assuming *arguendo* that Duseks' interpretation of the BSA is reasonable (which Glacier Bear denies), they have presented no admissible evidence sufficient to raise a genuine issue of material fact. Duseks' entire argument on this point is premised D. Quinn's Moisture and Mold Reinspection Report and statements he allegedly made in a phone call with Mr. Dusek, all of which constitute inadmissible hearsay.

Rule 801(c), F.R.Evid., defines hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." D. Quinn's

Moisture and Mold Reinspection Report and statements to Mr. Dusek were not made while testifying in this case, and certainly were not made under oath so as to satisfy the demands of Rule 56. Further, Duseks offer Mr. Quinn's report and statements to Mr. Dusek "to prove the truth of the matter asserted in the statement," *i.e.*, that the home still had un-remediated mold and moisture. As such, the D. Quinn report and statements are hearsay.

Federal caselaw is clear that a party may not raise a genuine issue of material fact by reliance upon inadmissible hearsay. *Skillsky*, *supra*, 893 F.2d at 1091-92; *New Orleans Assets v. Woodward*, 278 F.Supp.2d 776, 780 (E.D. La. 2003). Rather, a party opposing a motion for summary judgment "must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. . . Hearsay evidence and unsworn documents do not qualify as competent opposing evidence." *New Orleans Assets* at 780 (citation omitted). Accordingly, Mr. Quinn's report and alleged statements do not raise a genuine issue of material fact. F.R.Civ.P. 56(c)(2).

Further, Duseks have not designated D. Quinn as an expert witness. Mr. Quinn's report of his alleged findings, even if it could survive a hearsay objection, cannot be used at trial as Duseks' opportunity to designate an expert to testify on mold and moisture issues expired on July 1, 2022. Doc. 22 at 1.

Duseks have failed to raise a genuine issue of material fact or to show that Glacier Bear is not entitled to summary judgment based upon their alleged claims of unsatisfactory mold and moisture remediation.

**3. Personal Property Inspection**

By referring to their "right to visit the property" as a "Personal Visitation Contingency," Duseks are improperly adding language into the BSA that does not exist. Nowhere in the BSA is any condition or contingency tied to their right to visit the Property. While Duseks undisputedly had "the right to visit the property during the inspection period," that right to visit does not amount to the right to withdraw approval based upon that visit, especially when their objection based upon that visit was lodged after the Inspection Contingency deadline had expired.

Even if the BSA could be construed to grant Duseks a right to lodge objections based upon their visit, such a right was "to visit (sic) property in person <u>during the inspection period</u>" which ended at 5:00 p.m. on October 26, 2021. Doc. 27 at ¶ 10 (emphasis added). Their argument that this was a contingency without any deadline flies in the face of the plain language of the agreement, and defies commons sense. If the right to visit is read as a contingency, then it also follows that any right to object must also occur within "the inspection period." Any other interpretation would lead to an absurd construction of the BSA.

Duseks do not dispute that they visited within the inspection period, and that they did not raise any objection based upon their visit until October 30, 2021, which was four days after their last opportunity to do so.

The timing of the Duseks' visit to the property was entirely up to them, as was the timing of the Inspection Notice they delivered to Glacier Bear on October 15th. Mr. Darkenwald informed Ms. Goodwin that Duseks were originally scheduled to visit the Property on October 12th, but had to reschedule when the private jet they intended to charter to Montana was unavailable. Any perceived problem in regard to the visit vis-à-vis the Inspection Notice was one entirely of Duseks' own making. Duseks were, of course, free to postpone delivery of the Inspection Notice until after they had visited the property since they had until October 26, 2021 to deliver their Inspection Notice, and October 29, 2021 to withdraw from the BSA if they could not come to an agreement with Glacier Bear to resolve their objections. The decision to serve the Inspection Notice prior to their visit was Duseks' sole decision; they cannot rely on their own miscalculation to deprive Glacier Bear of the benefit of its bargain.

Further, Mr. Darknewald's alleged statements to the Duseks about their right to withdraw from the BSA "if the wind blew wrong against the property" are hearsay, and even if considered, cannot modify the terms of the parties' written agreement. "The execution of a contract in writing, whether the law requires it to

be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Mont. Code Ann. § 28-2-904. The BSA did not grant Duseks the right to withdraw from the BSA based upon their visit, unless it was done in conjunction with the Inspection Contingency. As their right to exercise the option to withdraw under the Inspection Contingency expired at 5:00 pm on October 26, 2021, their purported termination of the BSA on October 30, 2021, was untimely, and ineffective to terminate the BSA.

Finally, Duseks' decision not to sign the release of contingencies is irrelevant. Nowhere in the BSA is such a signed waiver required. Indeed, just the opposite is apparent from the face of the BSA: the burden was on Duseks to put their objections to any contingencies in writing before the applicable time period expired. That they failed to do so in a timely manner is undisputed.

**4. Glacier Bear is Entitled to Recover Its Attorney's Fees**

Duseks did not respond to Glacier Bear's argument that it is entitled to recover its attorney's fees and costs if it prevails on its motion. That argument should be considered well-taken, and Glacier Bear awarded its attorney's fees and costs if the Court grants Glacier Bear's motion.

## CONCLUSION

Based upon the undisputed factual record, and the arguments set forth in their briefing, Plaintiffs respectfully request this Court to grant their motion for partial summary judgment, and order that Defendants Matt and Rachel Dusek specifically perform their obligations under the BSA, and award Plaintiffs their attorney's fees and costs.

Dated this 31st day of August, 2022

Hall & Evans, LLC

By /s/Fred Simpson
Fred Simpson

## CERTIFICATE OF COMPLIANCE

I hereby certify that Plaintiff's Reply Brief in Support of Motion for Partial Summary Judgment is in compliance with Local Rule 7.1(d)(2). The text is proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and word count calculated by Word 365 is 3,247 words, excluding the caption, and Certificate of Compliance.

DATED this 31st day of August, 2022.

Hall & Evans, LLC

By___/s/Fred Simpson________
Fred Simpson