Shane P. Coleman
BILLSTEIN, MONSON & SMALL PLLC
1555 Campus Drive, Suite 201
Billings, MT 59102
Telephone: 406.656.6551
shane@bmslawmt.com

ATTORNEYS FOR DEFENDANTS
MATT AND RACHEL DUSEK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| GLACIER BEAR RETREAT, LLC, GAIL L. GOODWIN and DARRYL C. SLATTENGREN,<br><br>Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>MATT DUSEK and RACHEL DUSEK,<br><br>Defendants/Counterclaimants. | Case No. 9:22-cv-00019-DLC-KLD<br><br>**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE RE: REALTORS' CONTRACT INTERPRETATION** |

## INTRODUCTION

The legal interpretation of the Buy-Sell Agreement resides exclusively with the Court. Interpretations of that legal document by the dual-agent relator (as well as by the realtor's boss and lawyer) are irrelevant and they are likely to confuse the jury to the prejudice the Duseks. Such evidence should be excluded pursuant to Rules 401 and 403, Fed. R. Evid. Further, the realtor's discussions with his boss

and his lawyer on this subject are also inadmissible hearsay that should be excluded under Rule 802, Fed. R. Evid.

## BACKGROUND

Plaintiffs seek to specifically enforce the closing of a Buy-Sell Agreement for the purchase and sale of residential real estate. The Duseks believe that they properly and timely terminated the Buy-Sell Agreement under applicable contingencies. Plaintiffs believe that the Duseks' termination notice was improper and untimely.

Scott Darkenwald of Glacier Sotheby's International Realty ("Sotheby's") acted as the dual agent for all parties. The Buy-Sell Agreement included, *inter alia*, the three separate contingencies to closing that are at issue. The parties communicated separately with Darkenwald about the contingencies and their release dates. On October 28, 2021, Darkenwald sent the Duseks a "Notice of Release of Contingencies" form asking them to release these outstanding contingencies. The Duseks refused to sign that Release. Two days later, the Duseks sent express termination notices of the Buy-Sell Agreement for failure to meet the contingencies. Those contingencies are the essence of this case.

In deposition, Darkenwald testified that the Duseks' termination notice was untimely under his interpretation of the Buy-Sell Agreement, notwithstanding the Duseks' refusal to sign the Notice of Release of Contingencies that he sent them

two days earlier. Darkenwald further testified that he discussed his contract interpretation with Tom Burk, the President of Sotheby's, and with their legal counsel, Jaymie Bowditch. According to Darkenwald, both of those interested parties agreed with Darkenwald's legal interpretation.

At trial, Plaintiffs may try to rely on these non-parties' legal interpretations and their discussions about these legal interpretations. None of these individuals have been disclosed as either specially-retained or "hybrid" expert witnesses under Fed. R. Civ. P. 26(2), so the opinion testimony rules of Fed. R. Evid. 702, 703, 705 do not salvage their testimony. The only source of their potential opinion testimony was explained in Darkenwald's deposition. Plaintiffs' summary judgment brief relies on this inadmissible testimony and summarizes it as follows:

> Mr. Darkenwald told Mr. Dusek of his opinion that Duseks would have a problem with "seller's remedies" as he believed that Ms. Goodwin and Mr. Slattengren had complied with the Inspection Notice. Depo. S. Darkenwald, 97:6-99:18. He advised Duseks twice on October 25th, that their "contingencies are gone" and to have their attorney "look at Inspection contingency & Seller's Remedies in writing." *Id.*, 98:12-99:18. Mr. Darkenwald then confirmed that Tom Burk, the president of his company, Glacier Sotheby's International Realty, and Jaymie Bowditch, Glacier Sotheby's counsel, agreed with his assessment. *Id.*, 100:5-102:2. It was Mr. Darkenwald's opinion that as of October 25, 2021, Ms. Goodwin and Mr. Slattengren had complied with their obligations under the Inspection Notice and BSA, that it was too late for Duseks to back out of the Agreement, and at best they would lose their earnest money. *Id.*, 101:18-103:2.

Doc. 27, p. 11-12, ¶21. For purposes of this Motion, the foregoing passage sufficiently identifies the issues.

## Discussion

### I. The realtors' legal interpretations are irrelevant, because they invade the Court's province.

Under Rule 401, Fed. R. Evid., "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Here, the Plaintiffs proffer the testimony of non-party realtors and their counsel to offer their interpretation of the Buy-Sell Agreement. Those opinions are irrelevant, because "[t]he interpretation of a contract is a question of law." *Bank of Red Lodge v. W. Invs., Inc.*, 376 Mont. 551, 347 P.3d 266 (2014) (*quoting Corporate Air v. Edwards Jet Ctr. Mont. Inc.*, 2008 MT 283, ¶ 30, 345 Mont. 336, 190 P.3d 1111). These proffered contract-interpretation opinions are purely legal. They do not tend to make any fact more or less probable. As a result, these opinions do not meet the relevance threshold of Rule 401.

Alternatively, even if the realtors' legal opinions were somehow relevant, their limited probative value is substantially outweighed by the danger that their opinions will confuse the issues and will unfairly prejudice the Duseks. Rule 403, Fed. R. Civ. P., allows the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, the jury will be

presented with the plain language of the Buy-Sell Agreement. The jury will be instructed on the law as the Court deems proper, in view of the language of the Buy-Sell Agreement. Allowing the non-party realtors to present opinion testimony supporting one conclusion over the other invades the Court's province. Doing so is likely to confuse the jurors in light of the jury instructions, which state the law. In doing so, it unfairly prejudices the Duseks, given that the realtors' legal opinions (unsurprisingly) support a closing. On balance, the realtors' proffered testimony adds nothing and threatens to unduly confuse the issues to the Duseks' prejudice.

## II. Discussions among the realtors and their legal counsel are inadmissible hearsay.

The conversations between Darkenwald, Burk, and Bowditch about their self-serving interpretation of the Buy-Sell Agreement are undeniably hearsay. *See* Fed. R. Evid. 801(c). They are out-of-court statements that are plainly offered to prove the truth of the matter asserted – i.e., that these realtors and their lawyer prefer that the Buy-Sell Agreement be construed to require closing. Burk's and Bowditch's supposed agreement with Darkenwald's legal interpretation serves no purpose, other than to tell the jury that these three non-parties believe the Plaintiffs should prevail, based on their legal interpretation of the Buy-Sell Agreement – i.e., the very truth of the matter asserted. No exception saves this testimony from Rule 802's exclusion.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion in Limine and should exclude all testimony, documentary evidence, and argument concerning (1) the legal opinion of Darkenwald, as to his interpretation of the Buy-Sell Agreement; and (2) the supposed agreement to that opinion by Burk and/or Jaymie Bowditch under Rules 401, 403, and 802, Fed. R. Evid.

Dated this 16th day of December, 2022.

By: */s/ Shane P. Coleman*
Shane P. Coleman
BILLSTEIN, MONSON & SMALL PLLC

ATTORNEYS FOR DEFENDANTS MATT DUSEK AND RACHEL DUSEK

## CERTIFICATE OF COMPLIANCE

The undersigned, Shane P. Coleman, certifies that this Brief complies with the requirements of Rule 7.1(d)(2). The lines in this document are double spaced, except for footnotes and quoted and indented material, and the document is proportionately spaced with Times New Roman font typeface consisting of 14 characters per inch. The total word count is 1,105, excluding caption and certificates of service and compliance, table of contents and authorities, and exhibit index. The undersigned relies on the word count of the word processing system used to prepare this document.

By: */s/ Shane P. Coleman*

Shane P. Coleman
BILLSTEIN, MONSON & SMALL, PLLC

ATTORNEYS FOR DEFENDANTS
MATT DUSEK AND RACHEL DUSEK