Fred Simpson, Esq.
Hall & Evans, LLC
Millennium Building, Ste. 403
125 Bank Street
Missoula, MT 59801
Telephone: (406) 532-2635
Facsimile: (406) 519-2035
Email: simpsonf@hallevans.com

*Attorneys for Plaintiffs and Counterclaim Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| GLACIER BEAR RETREAT, LLC, GAIL L. GOODWIN and DARRYL C. SLATTENGREN,<br><br>Plaintiffs/Counterclaim Defendants,<br><br>vs.<br><br>MATT DUSEK AND RACHEL DUSEK,<br><br>Defendants/Counterclaimants. | ) | Cause No. CV 22-19-M-KLD<br><br>**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE** |

## INTRODUCTION

Plaintiffs Gail L. Goodwin ("Ms. Goodwin"), Darryl C. Slattengren ("Mr. Slattengren") and Glacier Bear Retreat, LLC, ("GBR") (collectively, "Glacier Bear") file this Brief in Opposition to Defendants' Motion in Limine.

Defendants Matt Dusek ("Mr. Dusek") and Rachel Dusek ("Ms. Dusek") (collectively, "Duseks") have filed a motion in limine to preclude Glacier Bear from introducing testimony, documentary evidence, and argument concerning:

1. The opinion of the realtor, Scott Darkenwald, as to his interpretation of the Buy-Sell Agreement; and

2. Tom Burk's (Darkenwald's boss) and Jaymie Bowditch's (their legal counsel) agreement with Mr. Darkenwald's opinion.

The Duseks' motion in limine should be denied. As a preliminary matter, until the Court decides the parties' cross-motions for summary judgment and determines whether any genuine issues of material fact remain for resolution by the jury, any decision as to what evidence may be relevant at trial is premature at best. In any event, Mr. Darkenwald's statements are not hearsay, and his testimony may be used to impeach testimony from the Duseks about their conversations with Mr. Darkenwald. Those opinions are relevant to the issues at hand and do not confuse the issues or unfairly prejudice the Duseks. Finally, while Glacier Bear denies that the contract at issue is ambiguous, Mr. Darkenwald's testimony may be relevant to determine the intent of the parties if the Court determines the Buy-Sell Agreement ("BSA") at the heart of this dispute is ambiguous.

## BACKGROUND

The factual background of this case was described in Glacier Bear's Brief in Support of its Motion for Partial Summary Judgment (Doc. 26) and Statement of Undisputed Facts (Doc. 27), and Glacier Bear incorporates those facts by this reference.

On or about October 5, 2021, Duseks (as Buyers), and Ms. Goodwin and Mr. Slattengren (as Sellers) executed the BSA, pursuant to which Duseks agreed to purchase the Property described in the BSA. Doc. 27, ¶ 4. Prior to the Duseks signing the BSA, Mr. Darkenwald believes that he discussed the terms of the contract "line by line" with them. Exhibit 1, Depo. Scott Darkenwald, 37:12-38:24. Mr. Darkenwald and co-agent Tracy Rossi prepared the BSA on a Montana Association of Realtors form, "in conjunction with" his clients. *Id.*, 38:25-39:24. The BSA provided a number of contingencies to closing. Doc. 27, ¶ 9, and Doc. 27-4. Following a home inspection conducted by a home inspector hired by the Duseks, the parties executed an Inspection Notice on or about October 17, 2021, pursuant to which Duseks and Glacier Bear agreed that Glacier Bear would repair the nine property conditions identified in the Inspection Notice in satisfaction of the BSA's Inspection Contingency, such that the BSA would proceed to closing. Doc. 27, ¶¶ 11-15.

On October 25, 2021, Mr. Darkenwald had a conversation with the Duseks during which they told him where they "stood with regard to purchasing the transaction and some concerns [they] had and that [they] were contemplating terminating the transaction and wanted to review with him, *as [their] agent*." *Id.*, ¶ 21 (quoting Mr. Dusek's deposition testimony) (emphasis added). Mr. Darkenwald advised Mr. Dusek of his opinion that Duseks would have a problem with "seller's remedies" as he believed that Ms. Goodwin and Mr. Slattengren had complied with the Inspection Notice. *Id.* He also advised Duseks twice on October 25th, that their "contingencies are gone" and to have their attorney "look at Inspection contingency & Seller's Remedies in writing." *Id.* Mr. Darkenwald then confirmed that Tom Burk, the president of his company, Glacier Sotheby's International Realty, and Jaymie Bowditch, Glacier Sotheby's counsel, agreed with his assessment. *Id.* It was Mr. Darkenwald's opinion that as of October 25, 2021, Ms. Goodwin and Mr. Slattengren had complied with their obligations under the Inspection Notice and the BSA, that it was too late for Duseks to back out of the Agreement, and at best they would lose their earnest money. *Id.* Moreover, Mr. Darkenwald told Mr. Dusek on October 25, 2021, "that everybody on our side thought the contingencies were past, and if he wanted to have a lawyer look at it, to get a different opinion, go for it." Exhibit 1, 225:16-226:13.

On October 26, 2021, Mr. Dusek "called and told [Mr. Darkenwald] that he was going to go forward" and that Mr. Darkenwald could so inform Ms. Goodwin. Doc. 27, ¶ 22. Mr. Darkenwald and Mr. Burk advised Ms. Goodwin in a call on October 29, 2021, of their opinion that the contingency period had expired and that "We still haven't heard from [Mr. Dusek] but as per the contract, the earnest money is hard; it was now non-refundable, and they are going forward with the contract." Exhibit 2, Depo. Gail Goodwin, 131:7-11, 173:2-24.

On October 30, 2021, Mr. Dusek emailed two letters to Mr. Darkenwald purporting to terminate the BSA and demanding a return of Duseks' earnest money. Doc. 27, ¶ 23.

Glacier Bear filed this suit to enforce the closing of the BSA on the grounds that the Dusek's termination notice was improper and untimely. Duseks' notice was untimely; at the latest, they had until 5:00 p.m., Mountain Time, on October 26, 2021, to terminate the Buy-Sell Agreement, or even under their interpretation of the Buy-Sell Agreement, until 5:00 p.m., Mountain Time, on October 29, 2021. *Id.*

**ARGUMENT**

Motions and subsequent orders in limine "save time at trial and protect the jury from being exposed to potentially prejudicial, inadmissible evidence." *Northbank Civil & Marine, LLC v. Ed Boland Constr., Inc.,* No. CV-15-38-GF-

BMM, 2016 U.S. Dist. LEXIS 141984, at *6 (D. Mont. Oct. 13, 2016) (citing *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003)). Judges have broad discretion when ruling on a motion in limine. *Rocky Mt. PSI, LLC v. Thayer*, No. CV 13-23-BLG-CSO, 2015 U.S. Dist. LEXIS 46509, at *3-4 (D. Mont. Apr. 9, 2015) (citations omitted). "It is settled law that rulings on limine motions are provisional. Such 'rulings are not binding on the trial judge [who] may always change his mind during the course of trial.'" *BNSF Ry. Co. v. Quad City Testing Lab., Inc.*, No. CV-07-170-BLG-RFC, 2010 U.S. Dist. LEXIS 113888, at *2 (D. Mont. Oct. 26, 2010) (quoting *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) and citing *Luce v. United States*, 469 U.S. 38, 41 (1984)). As such, "a motion in limine should not be used to resolve factual disputes or weigh evidence." *Id.* at *1 (citations omitted). In addition, evidence should only be excluded before trial when it is shown that the evidence is "'inadmissible on all potential grounds.'" *Id.* (citations omitted). Unless this high standard is met, "'evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context[]'" because the court is '"almost always better situated during the trial to assess the value and utility of evidence.'" *Id.* (citations omitted).

The Duseks' motion should be denied because the evidence they seek to exclude is not inadmissible on all potential grounds and may well be probative on

multiple issues depending on the Court's decision on the cross-motions for summary judgment.

## I. Mr. Darkenwald's Statements are Not Hearsay Pursuant to Fed. R. Evid. 801(d)(2)(D)

TheDuseks argue the conversations between Mr. Darkenwald, Mr. Burk, and Mr. Bowditch regarding the BSA are hearsay and are inadmissible under Fed. R. Evid. 802. Their assertion is incorrect. Pursuant to Fed. R. Evid. 801(d)(2)(D), Mr. Darkenwald's statements to Mr. Dusek, including those describing his discussions with Mr. Burk and Mr. Bowditch, are not hearsay. That rule provides:

> (d) **Statements That Are Not Hearsay.** A statement that meets the following conditions is not hearsay:
>
> …
>
> > (2) **An Opposing Party's Statement.** The statement is offered against an opposing party and:
> >
> > …
> >
> > > (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed.

Fed. R. Evid. 801(d)(2)(D).

The language of Rule 801(d)(2)(D) is unambiguous. *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 999 (9th Cir. 2019). The statements "'need only *concern* matters within the scope of the agency; they need not be within the scope of the agency.'" *Id.* (quoting *In re Sunset Bay Assoc.*,

944 F.2d 1503, 1519 (9th Cir. 1991)) (emphasis in original). Further, the declarant need not have "final decision-making authority" on the matter. *Id.*

Mr. and Mrs. Dusek signed a "Buyer-Broker Agreement" identifying Scott Darkenwald and Tracy Rossi of Glacier Sotheby's International Realty ("GSIR") as their "Exclusive" broker for the transaction. See Exhibit 1, 33:21-34:8. The "Buyer-Broker Agreement" was signed and dated by the parties on October 4, 2021, and provided, in part, "this Agreement shall terminate on 11/04/2021." *Id.* and Exhibit 3, Depo. Ex. 1 at GSIR 1283, ll. 20-21. Montana law provides that a "buyer agent means a broker or salesperson who, pursuant to a written buyer-broker agreement, is acting as the agent of the buyer in a real estate transaction and includes a buyer subagent and an in-house buyer agent designate." Mont. Code Ann. § 37-51-102(6).

Mr. Darkenwald and Ms. Rossi of GSIR acted as Dual Agents in the transaction. Exhibit 1, 34:9-16. Duseks signed a "Relationships/Consents in Real Estate Transactions" agreement with GSIR, Mr. Darkenwald, and Ms. Rossi in which Duseks authorized Mr. Darkenwald, Ms. Rossi, and GSIR to act as "Dual Agents" with respect to the purchase of Glacier Bear's property. Exhibit 3, GSIR 1294-1295. Further, the Buy-Sell Agreement also provided that Mr. Darkenwald and Ms. Rossi of GSIR would be acting as "Dual Agents" with respect to the transaction. Doc. 15-1 at 10, ll. 460-488.

Mr. Darkenwald was undoubtedly acting as the Duseks' agent at all times relevant to this dispute, including when he spoke to Mr. Dusek on October 25, 2021, and during his discussions with Mr. Burk and Mr. Bowditch. Mr. Darkenwald's statements to Mr. Dusek on October 25, 2021, were directly related to the real estate transaction and his advice regarding the meaning of the terms in the BSA and, therefore, were clearly within the scope of the principal-agent relationship. Mr. Darkenwald's discussions with Mr. Burk and Mr. Bowditch which he described to Mr. Dusek were also directly related to the real estate transaction and the commonly understood meaning of the terms in the BSA, and within the scope of the agency relation between Mr. Darkenwald and the Duseks. The principal-agent relationship between the Duseks and Mr. Darkenwald was active during these October 25, 2021 conversations and had not yet expired. Therefore, pursuant to Rule 801(d)(2)(D), Mr. Darkenwald's testimony regarding his communications and advice to Duseks concerning the interpretation of the BSA is not hearsay.

## II. Mr. Darkenwald's Testimony May Provide Impeachment Evidence Regarding Duseks' Credibility

Mr. Dusek has specifically asserted that in his discussions with Mr. Darkenwald on October 25, 2021, "there was no discussion of the sellers' remedies if the BSA did not close." Doc. 34-1, ¶ 10. Mr. Dusek further asserts, "We did not ever discuss the issue of specific performance with Scott Darkenwald." *Id.* Mr.

Dusek claims that it was on October 30, 2021 (the day he sent his letters purporting to terminate the transaction), not October 25, 2021, that Mr. Darkenwald discussed with him his belief that the Dusek's earnest money was at risk of loss or litigation. *Id.* Further, the Duseks assert the parties and Mr. Darkenwald "understood that the BSA was subject to the Dusek's personal visit to the Property and their satisfaction with the Property during that visit." Doc. 28 at 30.

Given Mr. Dusek's claims that Mr. Darkenwald never told him of the risks tied to an untimely termination of the transaction and Mr. Darkenwald's testimony that he advised Mr. Dusek of his opinion that termination would be untimely during their multiple conversations on October 25, 2021, Mr. Darkenwald's testimony is admissible to impeach Mr. Dusek. Any party may attack a witness's credibility. Fed. R. Evid. 607. Mr. Darkenwald's testimony goes to the Duseks' credibility about their claimed understanding of what the BSA meant, as well as their understanding of when the deadlines were to run. Based on Mr. Dusek's own testimony regarding this issue, Mr. Darkenwald should be permitted to testify to undermine Mr. Dusek's credibility.

## III. Mr. Darkenwald's Testimony Regarding the Buy-Sell Agreement is Relevant and Does Not Confuse the Issues or Unfairly Prejudice Either Party

The Duseks argue Mr. Darkenwald's opinions on the interpretation of the BSA are irrelevant, and even if relevant, their probative value is outweighed by the

danger of confusing the issues and unfairly prejudicing the Duseks. Not only is Mr. Darkenwald's testimony relevant to the interpretation the BSA, it also provides context regarding the circumstances surrounding the BSA and its subsequent purported termination by the Duseks. Further, Mr. Darkenwald's opinions do not confuse the issues or unfairly prejudice either party.

A Court "has great latitude in the admissibility of evidence." *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 920 (9th Cir. 2001). Decisions on the relevancy of evidence and "whether its probative value outweighs unfair prejudice to [a party] are committed to the court's sound discretion." *Id.* (citation omitted). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

This case centers on how the terms of the BSA are applied to the facts of this case and whether the Duseks breached the BSA. Mr. Darkenwald's testimony regarding the transaction and his conversations with the Duseks regarding their deadlines under the BSA, with respect to Duseks' consideration of whether to terminate the BSA, are relevant to the parties' knowledge and understanding of

that Agreement, the parties' knowledge and understanding of deadlines, and ultimately, the Duseks' knowledge regarding the BSA gained from their own agent. This is particularly relevant given Mr. Dusek's testimony as described above that he consulted with Mr. Darkenwald "as [their] agent" with respect to his concerns about terminating the BSA. This evidence goes directly to the dispute as to how the BSA is applied and interpreted and will assist the jury to determine whether the Duseks' breached the BSA.

Mr. Darkenwald's testimony is not only relevant, but its probative value is not substantially outweighed by a danger of confusing the issues or unfairly prejudicing the Duseks. Only sparingly should relevant evidence be excluded under Rule 403 because "'the Rule's major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" *Hutchinson v. City of Thompson Falls*, No. CV 19-195-M-DLC, 2021 U.S. Dist. LEXIS 18829, at *4 (D. Mont. Feb. 1, 2021) (quoting *United States v. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015)). Mr. Darkenwald's testimony regarding his and his company's interpretation of the BSA and his advice to the Duseks as their agent is anything but unfairly prejudicial or confusing to the jury; it is direct evidence of Duseks' knowledge and notice of how their own agent interpreted the BSA at a critical point in their decision making as it was offered only days prior to their tardy termination letters.

The Duseks' further assert that Mr. Darkenwald's opinions will unfairly prejudice them because his opinions support a closing. Simply disagreeing with another's interpretation of an agreement does not create an unfair prejudice. If this were the case, then Glacier Bear's testimony would also be unfairly prejudicial because their interpretation of the BSA also happens to support a closing. Mr. Darkenwald's testimony is not of scant or cumulative probative force dragged in for the sake of prejudicing Mr. and Mrs. Dusek. It is relevant to the issue of interpreting the BSA, and it is for the jury to determine the weight to be given to Mr. Darkenwald's opinions.

## IV. In the Event the Court Determines the Contract is Ambiguous, Parol Evidence in the Form of Mr. Darkenwald's Testimony is Relevant and Admissible

In Montana, the parol evidence rule is recognized as a principle of substantive contract law and not a rule of evidence. *Habets v. Swanson*, 2000 MT 367, ¶ 24, 303 Mont. 410, 420, 16 P.3d 1035, 1041. Ambiguity is an exception to the parol evidence rule. Mont. Code Ann. § 28-2-905. If it is determined the language of a contract is "reasonably susceptible to more than one interpretation," the contract will be deemed ambiguous and require the review of parol evidence to identify the meaning of the contract. *K&R P'ship v. City of Whitefish*, 2008 MT 228, ¶ 26, 344 Mont. 336, 344, 189 P.3d 593, 601 (citations omitted). Where a contract term is ambiguous, obscure or uncertain of meaning, "interpretation of the

language, and thus a determination of the real intention of the parties, is a matter to be left to the consideration of a jury." *Gray v. Billings*, 213 Mont. 6, 10, 689 P.2d 268, 270 (1984) (citation omitted).

In *DeNiro v. Gasvoda*, the contract at issue consisted of bids written by Gasvoda, a contractor. 1999 MT 129, ¶ 29, 294 Mont. 478, 485, 982 P.2d 1002, 1006. The District Court's decision to consider parol evidence "of the circumstances under which the bid was prepared" was found to be proper "in interpreting provisions of the contract which appeared ambiguous or uncertain." *Id*. The District Court found Gasdova's testimony to be credible, and the Montana Supreme court did not attempt to "reweigh that determination." *Id.*

Here, although Glacier Bear asserts the BSA is not ambiguous, if the Court determines otherwise, parol evidence, including Mr. Darkenwald's opinion, will be relevant to determine the intent of the parties in entering the contract, as well as the reasonableness of different interpretations, given the intentions of the parties when the contract was entered. If a jury is tasked with untangling an ambiguous real estate contract, Mr. Darkenwald's understanding, as an author of the document, would be highly relevant and probative of the circumstances under which the BSA was prepared.

## CONCLUSION

Based on the foregoing, Glacier Bear respectfully requests this Court deny Defendants Matt and Rachel Duseks' Motion in Limine.

Dated this 30th day of December, 2022.

Hall & Evans, LLC

By /s/Fred Simpson
Fred Simpson

## CERTIFICATE OF COMPLIANCE

I hereby certify that Plaintiffs' Brief In Opposition To Defendants' Motion In Limine is in compliance with Local Rule 7.1(d)(2). The text is proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and word count calculated by Microsoft Word is 3,041 words, excluding the caption and Certificate of Compliance.

DATED this 30th day of December, 2022.

Hall & Evans, LLC

By /s/Fred Simpson
Fred Simpson