IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| GLACIER BEAR RETREAT, LLC, GAIL L. GOODWIN, and DARRYL C. SLATTENGREN,<br><br>        Plaintiffs/<br>        Counterclaim<br>        Defendants,<br><br>vs.<br><br>MATT DUSEK AND RACHEL DUSEK,<br><br>        Defendants/<br>        Counterclaimants. | CV 22-19-M-KLD<br><br>ORDER |

Before the Court are two motions from Plaintiffs/Counterclaim Defendants Gail Goodwin, Darryl Slattengren, and Glacier Bear Retreat, LLC (collectively, "Glacier Bear"): (1) a motion for an award of attorney's fees (Doc. 50), and (2) a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) (Doc. 55). For the reasons set forth below, Glacier Bear's motion for attorney's fees is granted and its motion to alter or amend the judgment is granted in part and denied in part.

**I. Motion for Attorney's Fees**

Glacier Bear prevailed against Defendants/Counterclaimants Matt and Rachel Dusek ("the Duseks") in a claim for specific performance of a buy-sell

agreement ("BSA") on a parcel of real property located within the exterior boundaries of Glacier National Park. (Doc. 47). The Court held on summary judgment that, as the prevailing party, Glacier Bear is entitled to recover its reasonable attorney's fees under the express terms of the BSA. (Doc. 47, at 29).

On January 31, 2023, Glacier Bear timely filed a motion for an award of attorney's fees. (Doc. 50). *See* Fed. R. Civ. P. 54(d)(2)(B) (a motion for attorney's fees must be filed within 14 days of the entry of judgment). The Duseks do not oppose the motion, but reserve their right to appeal the judgment that gave rise to the attorney's fees award. (Doc. 52). Accordingly, Plaintiff's motion for an award of attorney's fees in the amount of $93,467.50 is granted.

## II. **Rule 59(e) Motion to Alter or Amend the Judgment**

Glacier Bear seeks to amend this Court's judgment to include awards of prejudgment interest and postjudgment interest at the federal statutory rate on the purchase price of $10 million from the BSA's original closing date of November 9, 2021, until the judgment is paid. Glacier Bear argues it is entitled to prejudgment interest under Montana Code Annotated § 27-1-211, which provides in pertinent part:

> Each person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover that is vested in the person upon a particular day is entitled also to recover interest on the damages from that day except during the time that the debtor is prevented by law or by the act of the creditor from paying the debt.

The Duseks counter that Montana Code Annotated § 27-1-211 grants interest only on awards for "damages," and therefore, does not apply to this Court's order directing specific performance. Additionally, the Duseks argue that because Glacier Bear has retained exclusive ownership of the property, which includes the ability to use and earn substantial short-term rental income, they are not entitled to a windfall of rents and profits plus interest on the purchase price. The Duseks do not address Glacier Bear's right to recover postjudgment interest.

The Court will discuss each issue in turn.

**A. Prejudgment Interest**

In diversity of citizenship cases, the allowance of prejudgment interest is governed by state law. *James B. Lansing Sound, Inc. v. Nat'l Union Fire Ins. Co.*, 801 F.2d 1560, 1569 (9th Cir. 1986). Montana Code Annotated Title 27, chapter 1, part 2 governs "Damages," which the statute defines as "compensation for [suffering detriment from the unlawful act or omission of another] in money." Mont. Code Ann. § 27-1-202. Section 211 provides that courts must award interest as a matter of right when a right is vested and the damages are "certain or capable of being made certain." Title 27, chapter 1, part 4 governs the "Availability of Remedies" for claims seeking "Specific and Preventative Relief."

Specific performance is an equitable remedy. *Double AA Corp. v. Newland & Co.*, 905 P.2d 138, 141 (Mont. 1995). In Montana, "the compensation awarded

3

as incident to a decree for specific performance is not for breach of contract and is therefore not legal damages." *Hughes v. Melby*, 362 P.2d 1014, 1016 (Mont. 1961) (citing 7 A.L.R. 2d 1204, 1206); *BD Inns v. Pooley*, 266 Cal. Rptr. 815, 820 (Cal. Ct. App. 1990) (explaining that confusion as to what may be awarded in addition to specific performance exists "because of the informal use of the term 'damages' in connection with such an award, but it is settled that such compensation neither constitutes damages as contemplated in an action for breach of contract, nor implies legal damages").[1]

In *Hughes*, the Montana Supreme Court overruled *Finlen v. Heinze*, 80 P. 918, 928 (Mont. 1905), a case in which the court had erroneously applied the prejudgment interest statute to an award of specific performance. 362 P.2d at 1017–18. In its discussion, the *Hughes* court quoted Chief Justice Brantly's dissent in *Finlen*, which stated, "I do not think the section of the statute cited in the majority opinion has any application." *Hughes*, 362 P.2d at 1017. *See also Idaho Asphalt Supply v. State, Dep't of Transp.*, 18 P.3d 1018, 1020 (Mont. 2001) (holding that court-ordered reimbursement payments are not "damages" for the purpose of that section).

---

[1] California Civil Code § 3287(a) is materially the same as Montana Code Annotated § 27-1-211, providing that pre-judgment interest shall be awarded as a matter of right on damages certain or capable of being made certain by calculation from the day upon which the right to recover vested. *See James B. Lansing Sound*, 801 F.2d at 1569.

This Court granted Glacier Bear specific performance of the BSA. Accordingly, Montana Code Annotated § 27-1-211 is not applicable here because that statute expressly governs awards of legal damages, relief that Glacier Bear sought only in the alternative to specific performance. In its Reply brief, Glacier Bear argues that, alternatively, it is entitled to interest under Montana Code Annotated § 27-1-312. Section 312 provides, "[t]he detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation with interest thereon." But because Title 27, chapter 2, part 3 governs "Measure of Damages," the Court also finds this section inapplicable.[2] When Glacier Bear elected to seek specific performance rather than an award of damages for the breach of an agreement to convey real property, it removed its controversy from within the scope of the statute.

Nevertheless, prejudgment interest may be awarded in addition to specific performance "for any delay in the vendee's performance of his obligation to pay." *BD Inns*, 266 Cal. Rptr. at 820. That is because a contract to purchase real property creates a reciprocal fiduciary relationship whereby "the purchaser acquires an

---

[2] Although not argued by Glacier Bear, for this same reason, Montana Code Annotated § 27-1-314 does not apply either. Section 314 controls the measure of damages for the breach of an agreement to convey real property. Section 314 provides, "[t]he detriment caused by the breach of an agreement to convey an estate in real property is considered to be the price paid and the expenses incurred in examining the title and preparing the necessary papers, with interest thereon."

equitable interest in the land and the vendor an equitable interest in the unpaid purchase price." *Bembridge, v. Miller*, 385 P.2d 172, 178 (Or. 1963). In other words:

> Absent any stipulation to the contrary, the purchaser has a right to possession or the rents and profits of the land and the vendor a right to interest on the unpaid purchase price. The fruits of possession and the interest are mutually exclusive—there is no right upon the part of either to have both.

*Bembridge*, 385 P.2d at 178. Typically, "the buyer is entitled to the rents and profits from the time the contract should have been performed, and the seller is entitled to an offset for the interest on the purchase money which he would have received had the contract been performed." *BD Inns*, 266 Cal. Rptr. at 820; *Sale v. Swann*, 120 S.E. 870, 873 (Va. 1924) (stating the general rule that when a contract is silent as to interest, the relief is adjusted upon equitable principles, giving "the profits to a vendee in possession, although conveyance has not passed, and interest to the vendor from the time the purchase money is due"). "Often the result is more like an accounting between the parties than an assessment of damages." *Hughes*, 362 P.2d at 1016.

It is well established that cases for specific performance "rest upon their own peculiar facts and circumstances." *Steen v. Rustad*, 313 P.2d 1014, 1020 (Mont. 1957). Likewise, "[t]he theory of equity in awarding interest on the purchase price in the specific enforcement of a contract for the sale of land is governed by the

peculiar character of the relation between vendor and purchaser." *Bembridge*, 385 P.2d 177–78.

"[T]he relief granted by a court of equity must be based upon the facts alleged in the pleadings and justified by the proof at trial," *Jensen v. Weyrens*, 474 N.W.2d 261, 265 (S.D. 1991). The Montana Supreme Court has reasoned that because "[r]arely do we find one case identical to another, . . . we find equity giving relief in one situation and denying it in another where the facts seem to be, but are not, quite identical." *Steen*, 313 P.2d at 1020. Additionally, "in arriving at a just result, [courts] will not be guided by any one case, but rather will interpret the facts of this case in the light of the many cases which have already been decided," *Hughes*, 362 P.2d at 1020 (quoting *Steen*, 313 P.2d at 1020), endeavoring "to place the parties in the same position they would have been in had the contract gone through as planned." *Hughes*, 362 P.2d at 1016.

On these facts, the Court is not convinced that an accounting is required to balance the equities in this case—where the vendor retained possession of the property for both personal use and retained the ability earn significant rents and profits throughout the pendency of the litigation. *Jensen*, 474 N.W.2d at 265 (affirming the district court's denial of damages in addition to specific performance because the plaintiff failed to meet his burden of proof as to the damages actually suffered and failed to mitigate damages).

Glacier Bear argues that its retention of the property throughout this litigation is irrelevant; moreover, it claims the rental profits it received in 2022 are "still significantly less" than the interest owed on the $10 million purchase price. (Doc. 64, at 7). The Court disagrees. *See Bembridge*, 385 P.2d 177–78 (ascribing "significance to the fact of immediate possession of the property by the purchaser"); *French v. Peirce*, 208 S.W.2d 327, 330 (App. Ct. Ky. 1948) (holding that because the vendor remained in possession of the property, the lower court did not abuse its discretion in failing to allow interest on the amount due).

Although Glacier Bear has not disclosed the actual income it has earned on the property since November 9, 2021, the closing date designated in the BSA, the amount is undoubtedly substantial. Goodwin testified that Glacier Bear regularly rents the property for $28,000 per week, primarily from May through September, but also for two weeks in March every year and occasionally over the Christmas and New Year holidays. (Doc. 62-3, at 4–5; Goodwin Dep. 45:3–47:9). Goodwin testified, "people love this property [and] they want to stay in this property," but once it went under contract in October, at Glacier Bear's real estate agent Scott Darkenwald's request, Goodwin stopped taking reservations. (Doc. 62-3, at 3; Goodwin Dep. 44:13–18). At some point before her deposition in July 2022 she had reopened the listing and quickly rented the property for the entire month of June and six consecutive weeks through August 13, 2022. (Doc. 62-3, at 4;

8

Goodwin Dep. 44:9–46:1). Goodwin testified that she "already had reservations through 2022," noting, "[m]any of them for this summer were made before the Duseks ever purchased the property." (Doc 62-3, at 6, Goodwin Dep. 50:19–52:3).

Because Glacier Bear has not provided this Court with evidence as to the actual income it has earned on the property while it retained possession pending the resolution of this litigation, the Court must assume it has rented or used the property to the full extent of Goodwin's testimony—that is, at a minimum, 22 to 24 weeks per year at a rate of $28,000 per week. Thus, without any evidence to the contrary, the Court finds that to grant Glacier Bear's request for both profits and interest on the $10 million purchase price would result in a windfall to Glacier Bear.

Accordingly, Glacier Bear's Rule 59(e) motion to alter or amend the judgment to include an award of prejudgment interest is denied.

### B. Postjudgment Interest

Unless the parties expressly agree otherwise, postjudgment interest is governed by federal law. *James B. Lansing Sound*, 801 F.2d at 1570; *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004). Title 28 U.S.C. § 1961(a) provides that interest "shall be allowed on any money judgment in a civil case recovered in a district court" to be "calculated from the date of the entry of the judgment." *James B. Lansing Sound*, 801 F.2d at 1570. The award of postjudgment interest on a district court judgment is mandatory. *Barnard v.*

*Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013) (citing *Air Separation Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 289–90 (9th Cir. 1995) (noting that the "[f]ailure to award postjudgment interest would create an incentive for defendants to exploit the time value of money by frivolously appealing or otherwise delaying payment.")).

The rate of interest on federal judgments is fixed generally by 28 U.S.C. § 1961 at a rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. 21 Moore's Federal Practice - Civil § 337.11 (citing *Van Asdale v. Int'l Game Tech.*, 763 F.3d 1089, 1091–93 (9th Cir. 2014)). Judgment in this case was entered on January 17, 2023. (Doc. 48). The federal judgment interest rate applicable to judgments entered the week ending January 13, 2023, is 4.7%. Bd. of Governors of the Fed. Reserve Sys., *Data Download Program*, http://www.federalreserve.gov/releases/H15/data.htm (follow the link to the DDP, then under "Select a preformatted data package," select "Weekly Averages," and click "Go to download") (last visited April 4, 2023).

The Duseks do not address Glacier Bear's right to recover postjudgment interest in their Response brief, essentially conceding the issue. *Root v. Mont. Dep't of Corr.*, CV 18-164-BLG-SPW-TJC, 2021 U.S. Dist. LEXIS 55063, *21–22 (D. Mont. Jan. 19, 2021). Accordingly, the Court finds that Glacier Bear is

entitled to postjudgment interest at the federal statutory rate of 4.7% on the purchase price of $10 million from the BSA's anticipated closing date of November 9, 2021, until the judgment is paid.

## III. Conclusion

IT IS ORDERED that Glacier Bear's motion for attorney's fees (Doc. 50) is GRANTED and its Rule 59(e) motion to alter or amend the judgment (Doc. 55) is GRANTED in part and DENIED in part as set forth above.

DATED this 4th day of April, 2023.

_____
Kathleen L. DeSoto
United States Magistrate Judge