**NOT FOR PUBLICATION**

FILED

JUL 11 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GLACIER BEAR RETREAT, LLC; et al.,<br><br>Plaintiffs-counter-defendants-Appellees,<br><br>v.<br><br>MATT DUSEK; RACHEL DUSEK,<br><br>Defendants-counter-claimants-Appellants. | No. 23-35117<br><br>D.C. No. 9:22-cv-00019-KLD<br><br>MEMORANDUM* |
| GLACIER BEAR RETREAT, LLC; et al.,<br><br>Plaintiffs-counter-defendants-Appellants,<br><br>v.<br><br>MATT DUSEK; RACHEL DUSEK,<br><br>Defendants-counter-claimants-Appellees. | No. 23-35268<br><br>D.C. No. 9:22-cv-00019-KLD |

Appeal from the United States District Court
for the District of Montana
Kathleen Louise DeSoto, Magistrate Judge, Presiding

Argued and Submitted March 26, 2024

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

San Francisco, California

Before: PAEZ, NGUYEN, and BUMATAY, Circuit Judges.

Matt and Rachel Dusek (collectively, "Buyers") appeal the district court's order granting summary judgment in favor of Glacier Bear Retreat, LLC, Gail Goodwin, and Darryl Slattengren (collectively, "Sellers").[1] We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

**1.** At issue in this litigation are two contingency provisions included as part of a multi-million-dollar real estate Buy-Sell Agreement ("BSA") entered into by the parties. These provisions specified different circumstances under which Buyers could unilaterally terminate the BSA. The parties dispute whether Buyers properly relied upon either contingency when they sought to terminate the BSA.

The first of these contingency provisions—the "Water Rights Contingency"—required that "All well related permitting, well log recording, and any associated water rights . . . be in place prior to closing." The second of these provisions—the "Inspection Contingency"—authorized Buyers, prior to a specified date, to give notice of their disapproval of any property conditions in an "Inspection Notice" and either terminate the BSA on that basis or "elect[] to negotiate a resolution of the conditions noted." If Buyers elected to negotiate, they

[1] In a separately filed order, we address Sellers' cross-appeal of the district court's denial of their motion to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) to include an award of prejudgment interest.

were required to include in the Inspection Notice "all of [their] objections and requested remedies." Buyers could then "enter into a written agreement in satisfaction of the conditions noted" with Sellers, in which case the Inspection Contingency would cease to be in effect. If, however, Buyers did not enter into such a written agreement and did not withdraw the Inspection Notice, the BSA would be terminated.

The district court concluded that Buyers were not authorized to terminate the BSA based on either contingency. We agree.

**2.** *Water Rights Contingency.* Buyers' reliance on the Water Rights Contingency did not authorize them to terminate the BSA. As an initial matter, the Water Rights Contingency is a condition precedent and so must be construed strictly under Montana law. *Scottsdale Ins. Co. v. Hall*, 316 Mont. 460, 467 (2003). Here, the BSA requires that the *contingency* be satisfied, not that the party invoking it be satisfied. Thus, contrary to Buyers' arguments on appeal, a *subjective* belief that the water rights are not "in place" would be insufficient to terminate the BSA under the Water Rights Contingency. Rather, Buyers needed to demonstrate that the water rights were *objectively* not "in place" to properly invoke the provision. This interpretation accords with how Montana courts have construed similar conditions precedent predicated on one party's approval or satisfaction. *Cf. Bender v. Rosman*, 413 Mont. 89, 97 (2023) (relying on objective

indicia to determine whether condition precedent was "satisfied"); *see also Waite v. C.E. Shoemaker & Co.*, 50 Mont. 264, 287 (1915).

Viewing the evidence in the light most favorable to Buyers, they have failed to raise a genuine dispute of material fact that the water rights were not "in place" at the time they intended to terminate the BSA. In Montana, contractual provisions are interpreted "according to their plain, ordinary meaning." *Ophus v. Fritz*, 301 Mont. 447, 453 (2000). The plain, ordinary meaning of the phrase "in place" emphasizes operative function. *See* Merriam-Webster's Collegiate Dictionary 946 (11th ed. 2003) (defining "in place" as "established, instituted, or operational"). Buyers do not dispute that, at the time of their intended termination of the BSA, all water rights relevant to the property were operational. Rather, Buyers' sole argument is that the water rights were not "in place" because Sellers had not at the time filed a Form 617 with the Montana Department of Natural Resources and Conservation to finalize the property's well-rights permit. Although this form, if not filed within a year, would render the property's well-rights permit subject to cancellation, it had no effect on the operative function of the property's water rights.[2] Thus, we conclude that Sellers' failure to file a Form 617 is not sufficient to raise a genuine dispute of material of fact whether the water rights were "in

---

[2] Buyers also presented no evidence that suggested Sellers would not file the Form 617. As the record reflects, Sellers filed it in June 2022.

place"—that is, operational—at the time they sought to terminate the BSA.

**3.** *Inspection Contingency*. Buyers' reliance on the Inspection Contingency did not authorize them to terminate the BSA. In addition to identifying the unsatisfactory conditions and proposed remedies required by the Inspection Contingency, the Inspection Notice contained the following language:

> If Seller and Buyer agree to the remedies specified above, this document shall constitute an amendment to the Buy-Sell Agreement referred to above and shall be an integral part of this transaction. Seller shall complete all agreed upon resolution(s) to the condition(s) and problem(s) identified by 5:00 p.m. (Mountain Time) on 11/05/2021.

Thus, in this case, the parties agreed to certain remedies which "satisf[y]" the conditions noted in the Inspection Notice.[3] As a result, the Inspection Contingency ceased to have any force or effect, and Buyers could not rely on it to terminate the BSA. In the absence of a contingency governing the matter, Buyers were entitled only to seek damages for any remaining issues under the terms of the Inspection Notice. *Cf. Halcro v. Moon*, 226 Mont. 121, 125 (1987) ("A breach which goes to only part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract; the injured party is still bound to perform his part of the agreement,

[3] We do not agree with Buyers that the language "written agreement in satisfaction of the conditions noted" requires that the conditions noted be "satisfied to their liking." Nor do we agree that the language is ambiguous.

and his only remedy for the breach consists of the damages he has suffered therefrom." (quoting *Johnson v. Meiers*, 118 Mont. 258, 263 (1946))).

For the foregoing reasons, we agree with the district court that Buyers did not properly rely upon either the Water Rights Contingency or the Inspection Contingency to terminate the BSA. The district court correctly granted Sellers' motion for summary judgment.

**The judgment in Appeal No. 23-35117 is AFFIRMED.**[4]

[4] No petition for rehearing may be filed until the court files a disposition in Appeal No. 23-35268.